## GIBSON v. UNITED STATES.
### No. 75 of 1947.

United States District Court
E. D. Pennsylvania.

Oct. 31, 1951.

Freedman, Landy & Lorry, Philadelphia, Pa., for libelant.

Gerald A. Gleeson, U. S. Atty., Krusen, Evans & Shaw, Philadelphia, Pa., for the United States.

KALODNER, Circuit Judge.

The question presented is whether a member of a ship's crew is entitled to maintenance and cure for periods of unemployment while recuperating from a heart attack which he suffered while in the service of the vessel.

This libel in personam was brought against the United States pursuant to the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. As originally drafted, it set out two causes of action, one for indemnity and one for maintenance and cure. The cause of action for indemnity is based upon respondent's negligence and will be disposed of separately. This opinion will deal only with the question of maintenance and cure.

I find the pertinent facts as follows:

1. At the time material hereto, the S.S. Ernest W. Gibson was owned by the respondent, the United States, and operated by International Freighting Corp., Inc., under a standard form general agency agreement.

2. Libellant, Arthur W. Gibson, was employed by respondent aboard The Ernest W. Gibson as second assistant engineer on a voyage which commenced at Baltimore in January, 1946.

3. In March, 1946, while the vessel was en route to Jacksonville, Florida, libellant suffered an occlusion of the left anterior coronary artery, with resultant severe damage to the anterior wall of the left ventricle of the heart.

4. Libellant was taken ashore on March 18, 1946, and confined in the U. S. Naval Hospital at Key West, Florida, until May 31, 1946, when he returned to his home in Woodlynn, New Jersey. Thereafter he received outpatient care at the U. S. Public Health Service in Philadelphia, and on two occasions in 1946 was a patient in the U. S. Marine Hospital at Baltimore for purposes of re-examination.

5. From April 15, 1947, until the date of trial, libellant has been under the continuous care of Dr. Ernest E. Manser, a heart specialist attached to the Cooper Hospital at Camden, New Jersey.

6. Libellant's treatment at the hands of Dr. Manser has consisted of sedatives and other medication designed to relieve him of chest pains and other discomforts which he experienced during this period. As a result of this medication his pains were reduced in number and intensity. However, there has been little noticeable physiological improvement in the damaged heart tissue since shortly after the occlusion occurred.

7. Libellant first returned to work some time in the latter part of 1947. At that time he worked for a newspaper, The Pennsylvania Banker, for not less than three days. His next employment was for a period of sixty days (August 8 to October 6, 1950) as a clerk in a Philadelphia hotel. He then worked for ninety-three days (November 18, 1950 to February 18, 1951) as a telephone operator at the Cooper Hospital.

8. On the evening of February 18, 1951, he was taken sick while working at the Cooper Hospital and was confined there for not more than two days.

9. On March 25, 1951, libellant was re-employed by The Pennsylvania Banker, and was there employed at the time of trial.

10. Libellant was paid maintenance at the rate of $5 per day from the date of his release from Key West Naval Hospital, up to and including May 26, 1947. He also received his transportation expenses from Key West to Baltimore (the port of signing on), and wages to March 27, 1946 (the end of the voyage on which he was taken ill).

11. The parties have stipulated that any maintenance and cure to which libellant is entitled shall be paid at the rate of $5 per day up until June 15, 1948, and $6 per day thereafter.

### Discussion

As stated at the outset, we are here concerned only with the maintenance and cure phase of the present litigation. Accordingly, I have made only those findings of fact which I considered necessary to this end, without prejudice to the right to make whatever additional findings are required in order to dispose of libellant's claim for indemnity at a later date.

The single issue to be resolved is clear-cut—whether the right to maintenance and cure in the case of one who has suffered a heart attack extends beyond a date which is more than fourteen months after the attack, when it is acknowledged that there has been little or no physiological improvement in the damaged heart tissue since shortly after the attack.

Respondent maintains that it has discharged any obligation it might have owed libellant with respect to maintenance and cure by providing his maintenance for the period up to and including May 26, 1947. In its requests for findings of fact, respondent has submitted that any treatment which libellant has received since that date has not brought about "a 'cure' or pathological improvement" in his condition; and that this treatment has been designed merely to alleviate "symptoms of pain and discomfort". On the basis of such proposed findings, respondent would have me rule that libellant is precluded from further relief by the Supreme Court's decision in Farrell v. United States, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850, which, it is urged, marked the outer limits of the doctrine of maintenance and cure.

It is axiomatic that "the limits of cure or care, both as to kind of treatment

and time of continuance, must always depend on the facts of each particular case." The Bouker No. 2, 2 Cir., 1917, 241 F. 831, 835.

The factual situation in the Farrell case was by no means similar to that in the instant case. Farrell had been discharged from a government hospital as completely disabled. He was totally and permanently blind, and suffered from post-traumatic convulsions which, at the time of trial, were without possibility of further cure. On these facts, his claim that he was entitled to maintenance for as long as he might be disabled, which in his case would be for life, was denied by the Supreme Court.

By contrast, Gibson is today far from being completely disabled. He testified that when he first went back to work in 1947 he was unable to hold a job for more than a few days. After continuing under the care of Dr. Manser for about three years he was able to work at his next job for a period of sixty days, then he was able to work for a period of ninety-three days, and as of the date of trial he had been steadily employed for over a month. Farrell v. United States, supra, could not possibly be construed as requiring denial of libellant's claim for that period during which he was being rehabilitated so that he could again attempt to earn a livelihood for himself and his wife.

In spite of the obvious distinction between the two cases, respondent urges that the decision in the Farrell case is controlling here because Gibson's treatment since May 26, 1947 has not been "treatment of a curative nature", as that term was used in the Farrell opinion.[1] Respondent has made much of the fact that Dr. Manser admitted on cross examination that there has been little change in the pathology or physical condition of Gibson's heart muscle since a few months after the attack. From this it is urged that there

has been no "real" improvement in Gibson's condition since May 26, 1947, and hence that he should not recover in this action.

■ I cannot subscribe to respondent's contention. I find that the treatment received by Gibson since May of 1947 has been "treatment of a curative nature", within the meaning of the Farrell case.

Gibson suffered what is known as a coronary thrombosis. One of the main arteries leading into his heart became blocked, or occluded, as a result of which the blood supply to a large area of heart muscle was shut off. Lack of blood in the heart muscle causes a rapid degeneration of tissue. This is followed by a healing process, or buildup of scar tissue, in the affected area. This latter process is known as infarction and may take up to several months, depending upon how much healthy tissue has been destroyed. Respondent points out that the infarction in Gibson's case was long since completed by May of 1947, hence the argument that there could be no "real" improvement after that.

This argument overlooks what is perhaps the most important consideration in the treatment of heart disease. Gibson's therapy up to the present time has consisted of the use of various drugs designed to relax him and relieve him of the chest pains he has been having, and both he and Dr. Manser testified that this medication has been very effective. Medical science has been unable to determine the exact causes of heart trouble, but it seems to be generally accepted that mental strain and worry are factors. As one noted cardiologist expresses it: "We must admit that long hours of nervous tension and mental concentration with inadequate relaxation and too few vacations, probably play a definite part. * * *"[2] Therefore, sedation and freedom from pain are extremely important in the treatment of a coronary condition,

---

1. "The Government does not contend that if Farrell receives future treatment of a curative nature he may not recover in a new proceeding the amount expended for such treatment and for maintenance while receiving it." 336 U.S. at page 519, 69 S.Ct. at page 711.

2. Stroud & Stroud, "Coronary Disease Including Angina Pectoris" in Vol. II The Diagnosis and Treatment of Cardiovascular Disease, p. 1162 (Stroud, 4th ed. 1950).

not only from the standpoint of the patient's comfort, but also because they relieve his mind and thus lessen the possibility of recurrent attacks.[3] Accordingly, it is unrealistic to say that once physiological improvement in Gibson's heart muscle ceased, further treatment was not "of a curative nature". Any treatment which relieved him of physical pain and the attendant mental anguish, under the circumstances was "curative" in the true sense of the word, even though the damage to his heart may never be further repaired.

For the above reasons I find that respondent did not discharge its obligation to libellant by providing him with maintenance only up to May 26, 1947. The libellant is entitled to maintenance until March 25, 1951, the date on which he returned to work, less those periods he worked in the interim. He was employed for not less than three days in 1947, for sixty days in the summer of 1950, and for ninety-three days in the winter of 1950–51. Since he cannot receive maintenance for these periods, they will be deducted from the total number of days to which he would otherwise be entitled.

Accordingly, I find that at the stipulated rates of $5 per day up to June 15, 1948, and $6 per day thereafter, libellant is entitled to maintenance for 383 days at $5 and 859 days at $6, or a total of $7,069.

I state the following

### Conclusions of Law

1. Respondent has not fulfilled its obligations with respect to maintenance and cure by providing libellant with maintenance for the period up to and including May 26, 1947.

2. Libellant has been receiving treatment of a curative nature since May 26, 1947.

3. Libellant is entitled to recover in this action the sum of $7,069, representing

---

3. See Leaman, Management of the Cardiac Patient, p. 269 (1940). One cardiologist also points out that the emotional upset that accompanies a coronary condition may cause the patient to develop

maintenance for those periods he was unable to work between May 26, 1947, and March 25, 1951, when he returned to work.

An order may be submitted in accordance herewith.

an anxiety neurosis, which may result in more unpleasant difficulties than the heart condition itself. Brams, Treatment of Heart Disease, p. 78 (1948).