Andrew C. GOODEN, Jr.

v.

TEXACO, INC.

Andrew C. GOODEN, Jr.

v.

SINCLAIR REFINING COMPANY,
Respondent,

and

Texaco, Inc., Impleaded Respondent.

Nos. 195 of 1964, 151 of 1965.

United States District Court
E. D. Pennsylvania.

June 23, 1966.

344

Paul M. Goldstein, Philadephia, Pa., for libellant.

Krusen, Evans & Byrne, Mark D. Alspach, Philadelphia, Pa., for Texaco, Inc.

Clark, Ladner, Fortenbaugh & Young, Robert N. Ferrer, Philadelphia, Pa., for Sinclair Refining Co.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CLARY, Chief Judge.

These cases having been heard and upon submission of Findings of Fact and Conclusions of Law by the parties, the Court makes the following

## FINDINGS OF FACT

1. Libellant is a seaman in the United States Merchant Marine.

2. Texaco, Inc., respondent in No. 195 of 1964 in Admiralty, and impleaded respondent in No. 151 of 1965 in Admiralty, is a corporation which owned and/or operated the SS. TEXACO MISSISSIPPI, engaged in interstate or foreign commerce, at all times material herein.

3. Sinclair Refining Company, respondent in No. 151 of 1965 in Admiralty, is a corporation which owned and/or operated the SS. J. E. DYER, engaged in interstate or foreign commerce, at all times material herein.

4. On or about July 8, 1963, libellant entered the employ of Texaco, Inc., respondent, as a member of the crew of its SS. TEXACO MISSISSIPPI, under nearby foreign articles, in the capacity of fireman-watertender.

5. On or about September 5, 1963, libellant, while in the service of the SS. TEXACO MISSISSIPPI, sustained an accidental injury to his back. Such injury was not by reason of his own vice or gross misconduct or insubordination to orders.

6. Upon leaving the SS. TEXACO MISSISSIPPI on September 9, 1963, libellant was admitted to out-patient care at the United States Public Health Service at Philadelphia, and at the United States Public Health Service Hospital at Staten Island, New York, and received treatment to his back.

7. Libellant was pronounced fit for duty by the United States Public Health Service Hospital, Staten Island, New York, on December 15, 1964. He was asked to return to a United States Public Health Service Hospital for a later examination, and was again pronounced fit for duty at the Staten Island Hospital on February 9, 1965.

8. Libellant was examined by Doctor Burden for Sinclair on March 1, 1965 and rejected. However, when he furnished a fit for duty slip from United States Public Health Service, he was accepted for employment by Sinclair and

began service on March 2, 1965 in the capacity of wiper on the SS. J. E. DYER.

9. The medical evidence indicates, and the Court so finds, that libellant was not, as a matter of fact, fit for duty either at the times he was granted the above-mentioned fit for duty slips by the United States Public Health Service, or when he joined the SS. J. E. DYER.

10. While serving aboard the SS. J. E. DYER, the injuries sustained aboard the SS. TEXACO MISSISSIPPI were heightened and libellant was obliged to leave the SS. J. E. DYER on March 12, 1965 because of that disability. He sustained no accident aboard the SS. J. E. DYER.

11. Following his discharge from the SS. J. E. DYER, libellant was readmitted to out-patient care at the United States Public Health Service, Philadelphia. Subsequently he was pronounced fit for duty by the United States Public Health Service in Staten Island, New York, on April 6, 1965, and again on April 23, 1965.

12. Despite these fit for duty certificates, the Court finds, on the basis of the medical evidence given, that libellant was not fit for duty on either of these dates.

13. On June 25, 1965, libellant was assigned to service aboard the SS. GULF-KNIGHT. After a physical examination, he was rejected for service aboard that vessel for medical reasons.

14. Since that time libellant has been designated permanently not fit for sea duty, although fit for limited shore duty. Beginning approximately April, 1966, libellant has been undergoing vocational rehabilitation by attending the Philadelphia Multilithing School for training in that trade.

15. Libellant has been, as a matter of fact, disabled and not fit for duty at all times from September 5, 1963 down to the present time. This disability was caused solely by the accident which occurred on September 5, 1963 while aboard the SS. TEXACO MISSISSIPPI.

Service upon the SS. J. E. DYER only heightened the pain from the pre-existing injury.

16. Libellant has not gained maximum recovery from his injury of September 5, 1963. Further conservative treatment, and even a possible future operation, might significantly alleviate libellant's condition.

17. Following libellant's injury on the SS. TEXACO MISSISSIPPI, he received maintenance from Texaco until May 20, 1964. Texaco then refused to pay any further maintenance. Only after libellant retained counsel and instituted suit was maintenance begun again by Texaco and payments were continued until December 15, 1964.

18. Libellant has waived his rights to maintenance from December 15, 1964, when he was stated to be fit for duty, until March 12, 1965, the date when he left the SS. J. E. DYER.

19. Following libellant's discharge from the SS. J. E. DYER, Sinclair refused to pay any maintenance. Finally $200.00 maintenance for the period March 12 through April 6, 1965 was paid by Sinclair on April 19, 1966. This was more than a year after such payments were due and only after counsel was retained and the legal action was far advanced.

20. Both Texaco and Sinclair have failed to provide maintenance and cure concurrent with the need and it was necessary for libellant to retain counsel and institute suit in order to sustain his rights.

21. Texaco, first sued, was represented by Krusen, Evans & Byrne. Sinclair, when sued, was likewise represented by Krusen, Evans & Byrne, who, despite the obvious conflict of interest, continued representation until the Court took critical notice of the conflict of interest. The firm did not attempt to implead Texaco in #151 of 1965 in Admiralty and used the dual representation to delay the rights of libellant to prompt payment of maintenance and cure.

22. Sinclair obtained independent counsel only after pointed suggestions from the Court.

23. Both respondent and impleaded respondent are responsible for delaying libellant's clear right to maintenance and cure.

All requested Findings of Fact submitted by the parties hereto, except insofar as affirmed by the foregoing, are denied.

What has been said in Findings of Fact Numbers 21, 22 and 23 is not, in any way, to be construed as any criticism of, or reflection upon, present counsel for Sinclair Refining Company, Robert N. Ferrer, Esquire, who has demonstrated complete fidelity to the Court, as well as to his client, throughout the proceedings subsequent to his engagement as counsel.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this suit.

2. A vessel is obligated to pay maintenance when a seaman becomes disabled while in the service of his vessel without regard to causal connection between the origin of the disability and the service. Therefore, respondent, Sinclair Refining Company, is obligated to pay maintenance for the period following service on the SS. J. E. DYER (March 12, 1965) until libellant is fit for duty or until the maximum cure possible has been effected.

3. Therefore, libellant is entitled to maintenance from Sinclair at the rate of $8.00 per day from March 12, 1965 to August 31, 1965 (the date he was admitted to the United States Public Health Service Hospital, Staten Island) and from November 9, 1965 (the date he was discharged from the Hospital) through May 24, 1966, a total of 368 days or $2944.00. From this is to be subtracted the sum of $200.00 paid him on April 19, 1966, leaving a balance of $2744.00, with interest at 5% per annum from the average date of October 17, 1965 through May 24, 1966, in the sum of $82.85, or a total sum of $2826.85. The above recovery is without prejudice to any later suit by libellant to recover such further maintenance to which he may be entitled subsequent to May 24, 1966.

4. Libellant is entitled to recover from respondent, Texaco, in #195 of 1964 in Admiralty, in addition to his statutory costs, a reasonable counsel fee, which, on the basis of the affidavit of libellant's counsel, is fixed at $750.00.

5. Libellant is also entitled to recover from respondent, Sinclair, in #151 of 1965 in Admiralty, a reasonable counsel fee and his necessary costs of $50.00 for medical examination, $250.00 for witness fee to Doctor Michael P. Mandarino, and $28.52 for photostatic copies of medical records, or a total of $328.52. In addition, libellant is entitled to recover a counsel fee for the work caused by the intransigence of respondent, Sinclair, when represented by Krusen, Evans & Byrne (see Docket Entries and Motions for Sanctions), as well as for work necessarily performed in the preparation and presentation of the case for trial and at trial. A reasonable counsel fee is fixed at $1250.00 in the above-stated action, plus enumerated costs.

6. Libellant's disability was caused solely by the accident which occurred on September 5, 1963 on Texaco's vessel. Respondent, Texaco, has now fulfilled its obligation for maintenance due up to and including December 15, 1964. Libellant has waived his right to maintenance from December 15, 1964 until March 12, 1965. Therefore, Texaco has paid to libellant all maintenance due him up until the time that he was discharged from service upon Sinclair's ship due to disability.

7. Respondent, Texaco, has a continuing responsibility and liability for maintenance from the time of the accident on September 5, 1963 up through the present time and until libellant reaches maximum medical recovery. A judgment for all maintenance owing to libellant through May 24, 1966 will be entered against Sinclair. Consequently, in order to avoid duplicity of recovery, no money judgment for maintenance and cure at this time

will be given in favor of libellant against Texaco.

8. Respondent, Sinclair Refining Company, is entitled to be reimbursed by impleaded respondent, Texaco, Inc., for all payments the former has made or will make in the future by reason of libellant's disability. This will include maintenance payments, as well as any future costs, and interest, found to be due libellant and/or his counsel.

9. Both respondents shall pay the costs and counsel fees set out above which shall be the sole responsibility of each.

All requested Conclusions of Law submitted by the parties hereto, except insofar as affirmed above, are DENIED.

### DISCUSSION

■ As the above Findings of Fact and Conclusions of Law indicate, this case involves the liability of successive vessels for the maintenance and cure of a seaman. Libellant, Gooden, was injured on September 5, 1963 on the SS. TEXACO MISSISSIPPI, owned by respondent, Texaco, Inc. As a result of such disability, Texaco is liable to libellant for maintenance and cure "during the period when he is incapacitated to do a seaman's work and * * * until he reaches *maximum medical recovery*." Vaughan v. Atkinson, 369 U.S. 527, 531, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 (1962).

■ Following libellant's injury on the SS. TEXACO MISSISSIPPI, he was pronounced fit for duty by the United States Public Health Service on four separate occasions—December 15, 1964, February 9, 1965, April 6 and April 23, 1965—the latter two following his discharge from the SS. J. E. DYER. Since that time he has been pronounced permanently not fit for sea duty, but fit for limited shore duty. These earlier fit for duty certificates are strong, but certainly not conclusive evidence that at those times libellant was, in fact, fully recovered from his injury aboard the SS. TEXACO MISSISSIPPI. Carleno v. Marine Transport Lines, Inc., 317 F.2d 662, 665 (4 Cir. 1963), cert. denied 375 U.S. 896, 84 S.Ct. 173, 11 L.Ed.2d 125

(1963); Downie v. United States Lines Company, 231 F.Supp. 197 (E.D.Pa. 1964); Labenz v. National Shipping & Trading Corp., 153 F.Supp. 785 (E.D.Pa. 1957). See also Lipscomb v. Groves, 187 F.2d 40 (3 Cir. 1951).

■■ On the basis of all the evidence in this case, the Court finds that libellant has never, in fact, been fit for duty, nor has he fully recovered since his injury on the SS. TEXACO MISSISSIPPI. This conclusion is reached after considering the fit for duty certificates, as well as the testimony of Gooden himself, his subsequent work record, and medical testimony. Therefore, since libellant might still benefit from continued medical treatment of his condition, Texaco is still liable for maintenance and cure. This obligation has continued until the last day of trial and may continue for sometime in the future.

■ Nor does libellant's subsequent service on Sinclair's ship during March, 1965, terminate the liability of Texaco. "[T]he circumstance that appellee was forced by financial necessity to return to his regular employment is not legally a bar to his recovery." Yates v. Dann, 223 F.2d 64 (3 Cir. 1955). See also Pyles v. American Trading & Production Corporation, 244 F.Supp. 685 (S.D.Texas 1965); Loverich v. Warner Company, 118 F.2d 690 (3 Cir. 1941), cert. denied 313 U.S. 577, 61 S.Ct. 1104, 85 L.Ed. 1535 (1941); Labenz v. National Shipping & Trading Corporation, 153 F.Supp. 785 (E.D.Pa.1957).

■■ However, Texaco has paid libellant all maintenance due and owing down to December 15, 1964. Maintenance between that date and when libellant left the service of Sinclair's ship, the SS. J. E. DYER, on March 12, 1965, has been waived. While on that ship from March 2 to March 12, Gooden's injury remanifested itself to such a degree that he was forced to go ashore. There is no doubt, and Sinclair in fact admits (Sinclair's brief, p. 5), that it is liable as the "last vessel" for all maintenance properly due subsequent to libellant's service on the SS. J. E. DYER. For the

same reason as was pointed out above, this includes maintenance up to and including the last day of trial. Thus both Texaco and Sinclair are obligated to libellant for maintenance from March 12, 1965. Simplicity in maintenance actions for the benefit of seamen seems to dictate that seamen should be allowed to look primarily to the last vessel for immediate payment of maintenance concurrent with the need. Vessel owners can later adjust or litigate any equities as between themselves. Consequently, in order to avoid duplication of recovery, a money judgment at this time will be entered in favor of libellant against Sinclair, but not as against Texaco.

Respondent, Sinclair, refused for a long time to pay libellant any maintenance and cure, despite its clear liability to do so as the last vessel on which libellant served. As a matter of fact, it was not until more than a year had elapsed, counsel retained, and suit instituted, that any payments at all were received from Sinclair. Such unjustified recalcitrance renders Sinclair liable to libellant both for attorney's fees and other costs of litigation. Vaughan v. Atkinson, 369 U.S. 527, 530, 82 S.Ct. 997 (1962); Smith v. Seitter, 225 F.Supp. 282, 287 (E.D. N.C.1964); Jordan v. Norfolk Dredging Company, 223 F.Supp. 79, 84 (E.D.Va. 1963). Compare Johnson v. Mississippi Valley Barge Line Co., 335 F.2d 904, 907 (3 Cir. 1964).

Therefore, although both Texaco and Sinclair owe a continuing duty of maintenance and cure to libellant, only a judgment against Sinclair in favor of libellant is being entered at this time. There remains the perplexing question, however, of the ultimate responsibility for payment of this maintenance as between Texaco and Sinclair. There seem to be no cases directly on point and those cited by the parties are, at best, analogous. Compare Jones v. Waterman S. S. Corporation, 155 F.2d 992 (3 Cir. 1946) with The Federal No. 2, 21 F.2d 313 (2 Cir. 1927). Sinclair argues that it is due reimbursement by Texaco. It is true, as pointed out by Sinclair, that this injury was caused solely by the accident which occurred upon the SS. TEXACO MISSISSIPPI. However, the right to maintenance and cure is in no way based upon negligence or unseaworthiness, nor was there any contractual relationship between Texaco and Sinclair that might make Texaco liable to Sinclair.

Nevertheless, this Court, while sitting in admiralty, is very largely a Court of equity attempting to render natural justice between the parties involved. "The court is bound to determine the cases submitted to its cognizance, upon equitable principles, and according to the rules of natural justice * * * the grand object of doing justice between the parties is superior to technical rules and forms * * *" 2 Benedict on Admiralty, 6th ed., section 223, at page 30 (1940). The fact remains that the sole cause of libellant's injury was the accident aboard the SS. TEXACO MISSISSIPPI. As pointed out above, Texaco is, therefore, still liable for maintenance and cure. Although we have concluded that it is for the benefit of the seaman to allow him to recover immediately all maintenance from the last vessel on which he served, ultimate responsibility for bearing the financial loss should be carried by the ship on which the accident actually occurred. Therefore, Sinclair can recover against Texaco in No. 151 of 1965 In Admiralty all maintenance and cure which it has been required to pay.

In this proceeding, Sinclair may not collect from Texaco its own counsel fee, and no award will be made to Sinclair for that purpose. I agree with the ruling made by my distinguished colleague, Judge Van Dusen, in the case of Gore v. Maritime Overseas Corporation and Ocean Cargo Ships, Inc., filed June 20, 1966, 256 F.Supp. 104. Judge Van Dusen, in his Opinion, has set forth in great detail the case law applicable to the principle involved that shipowners "are entitled to counsel fees under the policy of the admiralty law which encourages shipowners to pay maintenance claims rapidly and discourages situations

where a seaman may be denied a just claim for maintenance during the often lengthy period of time it takes competing shipowners, or a court, to resolve the issue of who is ultimately responsible for such payments," citing Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997 (1962), Jordan v. Norfolk Dredging Company, 223 F.Supp. 79 (E.D.Va.1963), and Sims v. United States of America War Shipping Adm'n, 186 F.2d 972 (3 Cir. 1951), cert. denied 342 U.S. 816, 72 S.Ct. 31, 96 L.Ed. 617; see also Jones v. Waterman S. S. Corporation, 155 F.2d 992 (3 Cir. 1946).

Here, the respondent, Sinclair, by positive action, thwarted the payment of a just claim and should not profit by its own actions. The ruling in the instant case, however, is without prejudice to the right of Sinclair to recover future counsel fees if forced to litigate the recovery over as against Texaco of the amount which it will be forced to pay under the judgment to be entered in this case.