Andrew C. GOODEN, Jr.

v.

**SINCLAIR REFINING COMPANY,**
Appellee,

v.

**TEXACO, INC., Appellant.**

**No. 16122.**

United States Court of Appeals
Third Circuit.

Argued Feb. 13, 1967.

Decided June 8, 1967.

Mark D. Alspach and Krusen Evans & Byrne, Philadelphia, Pa., for appellant.

Robert N. Ferrer, Philadelphia, Pa. (Thomas A. Reynolds, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., on the brief), for appellee.

Before SMITH and SEITZ, Circuit Judges, and JOSEPH S. LORD, III, District Judge.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The appeals in this case and in the *Gore* cases,[1] also decided today, raise important and apparently novel questions of admiralty law respecting a shipowner's right to reimbursement from a third party for maintenance and cure payments made to a seaman.

The facts as found by the trial court are not in dispute on this appeal. On September 5, 1963 or thereabouts, libellant Gooden ("seaman") hurt his back in an accident aboard the SS. Texaco Mississippi, owned by appellant Texaco, Inc. ("Texaco"). The circumstances of the accident do not appear from the present record except that the injury was in no way the result of any vice, gross misconduct, or insubordination on the part of the seaman.

After leaving the ship the seaman obtained treatment at United States Public Health Service facilities. Texaco paid the seaman maintenance until May 20, 1964 and, after he had retained counsel and instituted suit, until December 15, 1964. The seaman has waived any rights to maintenance from that date until March 12, 1965.

On two occasions during the winter of 1964–65 the seaman was pronounced fit for duty by the Public Health Service. Although at first rejected by a doctor for appellee Sinclair Refining Company ("Sinclair"), the seaman upon production of a fit for duty slip procured employment beginning March 2, 1965 aboard Sinclair's ship, the SS. J. E. Dyer. In fact, however, the seaman was not fit for duty and, as the trial court expressed it, his prior injuries were "heightened" on Sinclair's ship although he was not involved in any other accidents.

Forced to leave the second ship on March 12, 1965, the seaman received further treatment from the Public Health

Service which twice in April 1965 pronounced him fit for duty. Nevertheless, he was still not fit for duty and in June 1965 was rejected for service aboard the SS. Gulfknight. His disability continued down to the time of trial in May of 1966. At that time maximum recovery had not yet been reached. Even so, not until legal action had been taken against it did Sinclair pay the seaman $200 maintenance for the period March 12 through April 6, 1965. Except for the $200, neither shipowner made any other payments for maintenance of the seaman after March 12, 1965.

The seaman's 1964 libel against Texaco and his 1965 libel against Sinclair, in which Texaco was impleaded, were consolidated for trial both 1) on the right of the seaman to maintenance and cure after leaving Sinclair's ship on March 12, 1965 and 2) on the respective liabilities of the shipowners to pay it. Judgment totalling $2,826.85 was entered by the district court in the seaman's favor against Sinclair for maintenance plus 5% interest through May 24, 1966, without prejudice to possible future claims. In addition, certain costs and a counsel fee were awarded against Sinclair in the seaman's favor. The seaman was also granted a separate judgment against Texaco for counsel fees and statutory costs. However, even though Texaco was held to have a continuing maintenance and cure obligation toward the seaman, no judgment against it was entered on that basis because the trial court desired to avoid "duplicity of recovery". Finally, a finding that the seaman's disability was caused solely by the accident on board Texaco's ship provided the basis for the trial court's conclusion that Texaco was obligated to reimburse Sinclair for all the maintenance and cure Sinclair had paid the seaman on account of that disability.[2] Gooden v. Texaco, Inc., 255 F. Supp. 343 (E.D.Pa.1966).

1. Gore v. Maritime Overseas Corp., 3 Cir., 378 F.2d 584.

2. This judgment of reimbursement did not include counsel fees and costs allowed the seaman which the district court held in

his ninth conclusion of law were the sole responsibility of each shipowner. In his eighth conclusion of law the court did state that the right to reimbursement included any future costs and interest found to be due the seaman and/or his

Sinclair has not appealed the judgment against it for maintenance and cure of the seaman. Neither Texaco nor Sinclair appeals the judgments for costs and counsel fees. The sole appeal is by Texaco from the judgment against it ordering reimbursement of Sinclair.

 In order to be able to analyze the problem of the rights of the shipowners *inter se* it is necessary to consider their duties toward the seaman. Not only does Sinclair not appeal the judgment against it but in its brief in this Court it specifically affirms its maintenance and cure obligation toward the seaman. This obligation arises from the fact that the seaman, while in the service of Sinclair's ship, Vaughan v. Atkinson, 369 U.S. 527, 531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), became disabled through no insubordination, vice or misconduct of his own. Aguilar v. Standard Oil Co., 318 U.S. 724, 732, 63 S.Ct. 930, 87 L.Ed. 1107 (1943). It makes no difference that the disability was completely unrelated to the seaman's employment on Sinclair's ship, Farrell v. United States, 336 U.S. 511, 515–516, 69 S.Ct. 707, 93 L.Ed. 850 (1949). The obligation to provide maintenance and cure continues until maximum medical recovery has in fact been achieved, Vaughan v. Atkinson, 369 U.S. 527, 531, 82 S.Ct. 997 (1962), notwithstanding the issuance of Public Health Service fit for duty slips, Koslusky v. United States, 208 F.2d 957, 959 (2nd Cir. 1953); Permanente Steamship Corp. v. Martinez, 369 F.2d 297, 299 (9th Cir. 1966); Labenz v. National Shipping & Trading Corp., 153 F.Supp. 785, 786 (E.D.Pa.1957).

 Texaco naturally does not dispute these principles insofar as they establish Sinclair's liability to the seaman. However, Texaco in its brief is silent as to its own maintenance and cure obligation toward the seaman except to say that the lower court's conclusion to that effect was not appealable because no judgment was entered based upon it.[3] Yet we do not understand Texaco to dispute the trial court's determination that Texaco had an obligation to pay maintenance and cure prior to the seaman's service on Sinclair's vessel. In fact, Texaco has paid the seaman maintenance and cure for this period and we expressly conclude that it was obligated to do so.

 If our understanding of its counsel's oral argument is correct, Texaco contends that its obligation to pay the seaman maintenance and cure terminated upon his subsequent service on Sinclair's ship. But such is not the law in this Circuit, Loverich v. Warner Co., 118 F.2d 690, 693 (3rd Cir. 1941); Yates v. Dann, 223 F.2d 64, 67 (3rd Cir. 1955); Labenz v. National Shipping & Trading Corp., 153 F.Supp. 785, 786 (E.D.Pa.1957), or elsewhere, Koslusky v. United States, 208 F.2d 957, 959 (2nd Cir. 1953); Wilson v. United States, 229 F.2d 277, 280 (2nd Cir. 1956); Pyles v. American Trading and Production Corp., 244 F.Supp. 685, 686 (S.D.Texas 1965). As the Ninth Circuit expressed it only last year,

" * * * the better view [is] that employment aboard another vessel * *, although evidence of the fact that the seaman had fully recovered, is not conclusive." Permanente Steamship Corp. v. Martinez, 369 F.2d 297, 299 (9th Cir. 1966).

counsel. We do not now feel called upon to decide whether this conclusion was correct. But see the discussion with respect to counsel fees and expenses in the *Gore* cases.

3. We think that the trial court should have entered judgment for maintenance and cure in the seaman's favor against Texaco. The seaman's right to collect maintenance and cure from one shipowner should not have been foreclosed by the

existence of a right to collect from another. Although a seaman may ordinarily be inclined to look to the last vessel for immediate payment, no obstacles should be placed in the way of his recovery against any prior shipowners properly owing him a duty of maintenance and cure. The problem of double recovery can best be handled by allowing the seaman to execute upon his judgments only to such an extent as would grant him full recovery without duplication.

■ It is clear, therefore, that the seaman here, who is entitled to maintenance and cure from the time he left Sinclair's ship on March 12, 1965 until he obtains maximum medical recovery, had the right to collect his award from either Sinclair or Texaco or both. Of course, it is also clear that the seaman cannot obtain double compensation for a single maintenance and cure claim as a result of having rights against two shipowners:

" * * * in the admiralty as elsewhere in the law a litigant may not recover compensation for a single claim more than once. The ancient rule in the admiralty that the vessel and her owner must provide an injured seaman with maintenance was intended to assure him three meals a day and a bed in which to sleep during his treatment and convalescence. There is no basis in logic or law for assuming that he may ask for six meals a day or twin beds, however." McCarthy v. American Eastern Corp., 175 F.2d 727, 729 (3rd Cir. 1949), cert. denied, 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561 (1950). See also Yates v. Dann, 223 F.2d 64, 67 (3rd Cir. 1955); Vickers v. Tumey, 290 F.2d 426, 435 (5th Cir. 1961).

Given this fact that the seaman had alternative but not cumulative sources for maintenance and cure, his choice could control which shipowner was required to bear the ultimate liability unless rights are held to exist between shipowners. Since it has been shown that Sinclair's and Texaco's obligations are coextensive it would appear equitable to require these shipowners to share the maintenance and cure liability equally. This could be accomplished easily by allowing Sinclair, the shipowner which paid the seaman, to have contribution from Texaco, the shipowner which did not,[4] in the amount of one-half the maintenance and cure payments. In this fashion the ultimate liability would not be determined by which

shipowner was required initially to satisfy the seaman's claim.

The court below, however, held that equitable principles and rules of natural justice required the ultimate responsibility to be placed in full upon Texaco as the owner of the ship on which there occurred the accident causing the seaman's disability. Appellant Texaco, in contrast, points to the many Supreme Court cases such as Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949), which hold that, apart from situations involving gross misconduct, the manner in which a seaman's disability arises is totally irrelevant to his maintenance and cure rights.

■■ We agree with Texaco that the mere fact that the disability was caused by an accident on its ship rather than on another vessel should not be the basis for placing upon Texaco the entire maintenance and cure obligation for the period when its obligation was coextensive with Sinclair's. If the accident occurred even though Texaco exercised due care, maintained a seaworthy ship, and violated no other duty owed the seaman, its obligation toward the seaman during this period stands on precisely the same footing as Sinclair's: a disability arising while the seaman was in the service of the ship. Therefore, apart from a showing that Texaco violated a duty owed the seaman which caused his disability, we conclude that Sinclair and Texaco should share equally their coextensive obligation to provide maintenance and cure.

We do not know whether Texaco violated any duty toward the seaman which was responsible for the accident because the lower court made no finding on that point. Such a finding would, of course, have been irrelevant to the seaman's maintenance and cure claim. But it does not necessarily follow that such a finding is also irrelevant in determining the

---

4. We emphasize that the only maintenance and cure payments in issue concern the period after the seaman's service on Sinclair's ship, for of course Texaco has paid the maintenance due prior to that time. Had Texaco paid the seaman any

maintenance for the later period or given consideration for the seaman's release therefor, Sinclair would have had an obligation toward the seaman only for that amount which would grant the seaman full recovery without duplication.

rights of the shipowners *inter se*. We must consider, therefore, what the situation would be if at the time of the accident Texaco were negligent, its ship unseaworthy, or the like.

■■■ As the Supreme Court stated in Fitzgerald v. United States Lines, 374 U.S. 16, 18, 83 S.Ct. 1646, 1649, 10 L.Ed. 2d 720 (1963):

> "Although remedies for negligence, unseaworthiness, and maintenance and cure have different origins and may on occasion call for application of slightly different principles and procedures, they nevertheless, when based on one unitary set of circumstances, serve the same purpose of indemnifying a seaman for damages caused by injury, depend in large part upon the same evidence, and involve some identical elements of recovery."

As a result,

> " * * * when an injured seaman recovers full damages in an action for indemnity based upon unseaworthiness and negligence in which he has claimed loss of wages including the value of the board and lodging which form part thereof and medical expenses, if any, he has thereby recovered the maintenance and cure to which he is entitled up to the time of trial, at least." Mc-Carthy v. American Eastern Corp., 175 F.2d 727, 729 (3rd Cir. 1949), cert. denied, 338 U.S. 911, 94 L.Ed. 561 (1950).

In other words, a seaman cannot have both damages and maintenance and cure if there would result any duplication of recovery upon a single claim. See also Smith v. Lykes Brothers-Ripley S. S. Co., 105 F.2d 604 (5th Cir. 1939), cert. denied, 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505 (1939); Muise v. Abbott, 160 F.2d 590 (1st Cir. 1947); Bartholomew v. Universe Tankships, Inc., 279 F.2d 911 (2nd Cir. 1960). When a seaman in the same suit proceeds against one party for damages and against another for maintenance and cure, this prohibition against double recovery has given rise to the problem whether liability for damages is primary with responsibility for maintenance and cure being only secondary. In such cases the courts have sensibly placed the primary liability upon the party which has violated a duty owed the seaman, the maintenance and cure claim being payable only if recovery for damages is not obtainable. Seely v. City of New York, 24 F.2d 412 (2nd Cir. 1928); The Jefferson Myers, 45 F.2d 162 (2nd Cir. 1930); Mystic Terminal Co. v. Thibeault, 108 F.2d 813 (1st Cir. 1940); Gomes v. Eastern Gas & Fuel Associates, 127 F. Supp. 435 (D.Mass.1954).

■■ Given this fact that a seaman who joins two defendants in one suit is required to execute primarily on his damages judgment and only secondarily on his maintenance and cure judgment, the ultimate result should not be different here because the seaman has proceeded first upon his maintenance and cure claim. It would thus appear to be equitable to allow Sinclair, the shipowner which paid the seaman maintenance and cure, to seek exoneration from Texaco to the extent of the seaman's damages rights (if any) against Texaco. In this manner, once again, placement of the ultimate liability would not be controlled by which shipowner in the first instance was required to satisfy a seaman's claim.

■■ The rule respecting a shipowner's right to reimbursement from a third party which this analysis suggests is as follows: To the extent a shipowner proves that payments made in satisfaction of a maintenance and cure obligation have reduced or eliminated a concurrent claim which a seaman but for the prohibition against double recovery could assert against another party absent a release, the shipowner is entitled to reimbursement from the other party in such amount as will cause the ultimate liability to be placed: 1) by means of contribution, equally upon all shipowners with coextensive maintenance and cure obligations; or 2) by means of exoneration, fully upon the party with a primary obligation in damages arising out of negligence, unseaworthiness, or other violation of duty.

Appellant Texaco and appellee Sinclair argue at considerable length as to whether there is a right to reimbursement in analogous situations. Texaco cites The Federal No. 2, 21 F.2d 313 (2nd Cir. 1927), and Crab Orchard Imp. Co. v. Chesapeake & O. Ry. Co., 115 F.2d 277 (4th Cir. 1940), among other cases, for the proposition that reimbursement is not permitted absent some contractual relationship between the parties or the breach of a duty owed one by the other. But this court in Jones v. Waterman S. S. Corp., 155 F.2d 992, 1000–1001 (1946), chose not to follow The Federal No. 2 and distinguished Crab Orchard. To make matters complicated, however, in the Jones case the court found support in a lower court decision which was later reversed by the United States Supreme Court, United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 206 (1947). The extent to which this reversal has impaired the result in the Jones case is a matter of opinion. Compare Gomes v. Eastern Gas & Fuel Associates, 127 F.Supp. 435 (D. Mass.1954), with Pure Oil Company v. Geotechnical Corp. of Delaware, 129 F.Supp. 194 (E.D.La.1955). But regardless of whether these and similar cases are reconcilable in the light of such doctrines as common law indemnity, contract or quasi-contract, unjust enrichment, restitution, and subrogation, we are convinced that the equitable principles of contribution and exoneration are properly available for application in this case. For, as the Supreme Court stated in Vaughan v. Atkinson, 369 U.S. 527, 530, 82 S.Ct. 997, 999, 8 L.Ed.2d 88 (1962), "[e]quity is no stranger in admiralty; admiralty courts are, indeed, authorized to grant equitable relief." And the relief here proposed is designed to achieve the equitable result of assuring that the ultimate liability of shipowners remains the same regardless of how seamen choose or happen to seek recovery.

Texaco also argues that "leaving the obligation where it originally rested will certainly not work injustice", citing Diaz v. Gulf Oil Corp., 237 F.Supp. 261 (S.D.N.Y.1965). Although no question of liability between shipowners was involved, the court there surmised that "[i]n the long run, attaching liability for maintenance and cure to a ship where a recurring condition last manifests itself will probably work out fairly evenly for all the companies involved." 237 F.Supp. 261, 266. This observation might prove to be realistic if seamen were required to look solely or primarily to the last ship. In fact, however, as already noted, seamen are not and should not be restricted as to where they may look for satisfaction of their rights. See Permanente Steamship Corp. v. Martinez, 369 F.2d 297, 300 (9th Cir. 1966); Pyles v. American Trading and Production Corp., 244 F.Supp. 685, 687 (S.D. Texas 1965). There is thus no assurance that by leaving the obligation where seamen choose to place it there will be an even distribution of liability in the long run.

Finally, Texaco asserts that reimbursement should not be allowed because otherwise there would be the following unfortunate results: "'open end' liability over to unascertainable future shipowners of limitless duration."; delay in payment to seamen while the shipowner's rights and liabilities are being resolved; and multiple litigation. However, we agree with Sinclair that reimbursement does not subject a shipowner to any more extended liability than already exists toward seamen. We also agree that there can be no delay in payment to a seaman who is entitled to seek recovery however he chooses regardless of where liability must ultimately be placed.[5] Lastly, there will be little increase in litigation in situations where impleader is available. And in those situations where impleader is impossible

5. Indeed, we think a trial court would be obliged to determine a seaman's maintenance and cure rights first whenever the contemporaneous trial of reimbursement claims might unreasonably delay the seaman's recovery.

or impractical the resulting increase in litigation seems fully justified by the achievement of uniformity and consistency in the placement of ultimate liability.

■ There remains only a consideration of whether, as a court sitting in admiralty, we have the authority to reach a result for which there is no precise precedent. In this case, as in Kermarec v. Compagnie Generale, 358 U.S. 625, 630, 79 S.Ct. 406, 409, 3 L.Ed.2d 550 (1959), we think that "[t]he issue must be decided in the performance of the Court's function in declaring the general maritime law, free from inappropriate common-law concepts." There must, of course, be "no impingement upon legislative policy." The Supreme Court in Halcyon Lines v. Haenn Ship Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), stated that contribution among joint tortfeasors would involve such an impingement upon legislative policy. We thus think it appropriate to consider that case even though we are not here confronted with a joint tortfeasor situation.

In *Halcyon* the Supreme Court noted at the outset that "[t]o some extent courts exercising jurisdiction in maritime affairs have felt freer than common-law courts in fashioning rules, and we would feel free to do so here if wholly convinced that it would best serve the ends of justice." 342 U.S. 282, 285, 72 S.Ct. 277, 280. But the court concluded that in the circumstances of that case " * * * it would be unwise to attempt to fashion new judicial rules of contribution and * * * the solution of this problem should await congressional action. Congress has already enacted much legislation in the area of maritime personal injuries." 342 U.S. 282, 285, 72 S.Ct. 277, 280.

Perhaps the best statement of the Court's holding in *Halcyon* is by its author, Justice Black, dissenting in Italia Soc. v. Oregon Stevedoring Co., 376 U.S. 315, 325, 84 S.Ct. 748, 754, 11 L.Ed.2d 732 (1964): " * * * we held that the system of compensation which Congress established in the Longshoremen's and Harbor Workers' Compensation Act as the sole liability of a stevedoring company to its employees prevented a shipowner from shifting all or part of his liability to the injured longshoreman onto the stevedoring company, the longshoreman's employer." Justice Black in his dissent in Ryan Co. v. Pan-Atlantic Corp., 350 U.S. 124, 135, 76 S.Ct. 232, 100 L.Ed. 133 (1956), explains that the *Halcyon* result was designed to preserve an employee's rights in full while at the same time limiting an employer's liability to that provided by Congress. See also Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); Jackson v. Lykes Bros. Steamship Co., Inc., 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488 (May 8, 1967).

The result reached in the present case, in contrast, does not impinge on any legislative policies. Liabilities of reimbursement which are imposed do not increase already existing liabilities of shipowners toward seamen. And seamen lose no rights which they now possess because no obstacle is placed in the way of their recovery in full from whatever source they choose. Only to the extent a seaman has already collected does the shipowner which is required to make payment obtain the opportunity to seek reimbursement. In this manner ultimate liability can be placed where it properly belongs regardless of the seaman's course of action. This approach in our view best serves the ends of justice.

Therefore, the judgment of the District Court must be vacated and the cause remanded to give appellee Sinclair the opportunity to establish the right to full reimbursement in accordance with the principles expressed in this opinion; otherwise judgment must be entered in Sinclair's favor against Texaco for one-half the amount Sinclair has paid the seaman as maintenance and cure. Each party shall bear its own costs in this court.