**ROYAL INSURANCE COMPANY OF AMERICA, Appellant,**

v.

**SPHERE DRAKE UNDERWRITING MANAGEMENT, LTD., Appellee.**

No. 09–97–485 CV.

Court of Appeals of Texas, Beaumont.

Submitted May 27, 1999.

Decided Sept. 30, 1999.

---

C.L. Solomon, James C. Bollom, Billings & Solomon, Houston, for appellant.

George Michael Jamail, Reaud Law Firm, Beaumont, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION ON MOTION
## FOR REHEARING

DON BURGESS, Justice.

Upon motion for rehearing, Sphere Drake makes several contentions we wish to address.

First, Sphere Drake contends our application of Texas contract law was incorrect. The basis of Sphere Drake's contention is that because Allemand's claim against Marine Fueling and the third-party tortfeasors was a maritime tort, the allocation of the recouped monies is governed by maritime law. Neither Allemand nor Marine Fueling are parties before this court in this action. The only parties before this court are two of Marine Fueling's insurers; the only issue is which insurance company's subrogation provision takes precedence. Sphere Drake cites *General Chemical Corp. v. De La Lastra*, 852 S.W.2d 916, 920 (Tex.1993), for support. In that case, General Chemical argued, and the Texas Supreme Court agreed, that maritime law, and not state law, controlled the case. *Id.* at 919. The suit was a products liability case brought by the parents of deceased shrimp fishermen. *Id.* at 917. The jury was asked, without objection, to determine damages which are recoverable under state law but not under federal maritime law. *Id.* The court held that state law applies because maritime law, although properly invoked, was waived. *Id.* The court noted that

[p]ursuant to the 'savings to suitors' clause of 28 U.S.C. § 1333, state courts have concurrent jurisdiction with the federal courts over maritime actions, constrained by the "reverse-Erie' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards.' *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 223, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986); *see also Texaco Ref. and Mktg., Inc. v. Estate of Dau Van Tran*, 808 S.W.2d 61, 64 (Tex.), *cert. denied*, 502 U.S. 908, 112 S.Ct. 301, 116 L.Ed.2d 245 (1991). Thus, maritime law does not affect a court's jurisdiction over the claim, it merely dictates the substantive law that governs that claim's resolution....

*Id.* at 920.

In *General Chemical*, it was the claims of the deceased's families which were found to be governed by maritime law (had that issue not been waived). We therefore agree that Allemand's claims would be governed by maritime law, were they before this court. The only matter before this court is Sphere Drakes' dispute with Royal over which insurance company recovers monies recouped from a third-party tortfeasor—not a maritime matter. Unlike *General Chemical*, the facts of this

case do not "come within the purview of maritime law." *Id.*

■ Sphere Drake next claims we erred because Marine Fueling (Royal) had no future maintenance and cure obligation to Allemand. Citing *In re Liberty Seafood, Inc.*, 38 F.3d 755 (5th Cir.1994), and *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008 (5th Cir.1994), Sphere Drake contends "[a]dmiralty law limits a maritime employer's suit for recoupment of maintenance and cure to the actual maintenance and cure outlay expended by the employer prior to any Jones Act settlement."

In *Liberty*, the injured seamen's employer, Herndon, was required to pay maintenance and cure after Liberty's vessel drifted into Herndon's anchored vessel. *In re Liberty Seafood*, 38 F.3d at 756. Herndon filed claims against Liberty for indemnity and contribution for maintenance and cure and for the costs of defending actions brought by the seamen and damages resulting from the loss of use of, and damage to, Herndon's vessel. *Id.* at 757. Liberty settled with the three seamen prior to trial. *Id.* Liberty then moved to dismiss Herndon's claims for indemnity and contribution on the basis that Herndon could not claim contribution from a joint tortfeasor because Liberty had settled with the seamen. *Id.* The district court agreed and granted Liberty's motion. *Id.* The Fifth Circuit reversed. *Id.* at 759.

The court noted that "maritime law provides two separate lines of recovery for an injured seaman: damages, and maintenance and cure." *Id.* at 758. The court then recognized

> [t]he damage claim may be brought against the employer and a third-party tortfeasor. In turn, through indemnity or contribution, the employer may recover from the third-party tortfeasor for part or all of any damages assessed against the employer. Thus, in a maritime collision, a third-party tortfeasor faces two distinct claims by a shipowner for contribution or indemnity: (1) for damages assessed against the shipown-

er; and (2) for maintenance and cure. As stated, *Bertram* holds that a settlement by the third-party with an injured seaman on the damage claim will not bar the shipowner's recovery of maintenance and cure.

*Id.* (citation omitted). The court then concluded that Herndon had a claim against Liberty for maintenance and cure.

Sphere Drake's claim that *Liberty* and *Bertram* limit the employer's suit for indemnity and contribution "to the actual maintenance and cure outlay expended . . . prior to any Jones Act settlement" is therefore clearly erroneous. The Fifth Circuit in *Liberty* explicitly held that Herndon (the employer) had a claim for indemnity and contribution for maintenance and cure *after* the Jones Act settlement between Liberty and the injured seaman occurred.

■ Sphere Drake further argues that "[o]nce Allemand recovered any money pursuant to his Jones Act or maritime negligence claims, he could no longer recover maintenance and cure from Marine Fueling." Sphere Drake cites *Gooden v. Sinclair Refining Co.*, 378 F.2d 576 (3rd Cir.1967); *Crooks v. U.S*, 459 F.2d 631, 633 (9th Cir.1972); *Vickers v. Tumey*, 290 F.2d 426 (5th Cir.1961); and *Smith v. Lykes Bros.*, 105 F.2d 604, 607 (5th Cir.1939), for support. We first note that the far more recent cases of *Liberty* and *Bertram*, which are from the Fifth Circuit, clearly recognize "two separate lines of recovery for an injured seaman: damages, and maintenance and cure." *In re Liberty Seafood*, 38 F.3d at 758. *See also Bertram*, 35 F.3d at 1013.

In *Smith*, the court found the injured seaman had a cause of action to recover maintenance and cure, as well as a cause of action for his personal injury, "but he did not have the right to be compensated twice for the same elements of damage." *Smith*, 105 F.2d at 606. The court noted, "[h]is reasonable expenses of maintenance and cure might have been recovered in the

form of indemnity in the action at law, but the evidence in the former case is not before us, and we do not know what items were proven or awarded therein." *Id.* The court concluded the record did not establish any "duplication or overlapping of the same elements of expense resulting from one and the same injury" existed and therefore the lower court erred in dismissing the action. *Id.*

The court in *Crooks,* 459 F.2d at 633, stated "[t]he obligation of maintenance and cure has ... traditionally been subject to the limitation that the seaman is not entitled to double recovery....No matter what the basis of the shipowner's obligation, ... lost wages cannot be recovered more than once. Nor can the cost of maintenance and cure."

In *Vickers,* 290 F.2d at 434, the court determined that while loss of wages as an element of damages may extend indefinitely, "that is not so with regard to this limited duty to pay wages as a part of cure." The court found that while the element of wages was inherent "in each of the two types of recoveries, there must not be a duplication in the final award...." *Id.* at 435.

In *Gooden,* a seaman was injured aboard a Texaco vessel. He later secured employment on a vessel owned by Sinclair. *Gooden,* 378 F.2d at 578. The sole issue on appeal was whether Texaco had to reimburse Sinclair the judgment rendered against Sinclair for maintenance and cure. *Id.* at 579. Texaco argued that its obligation to pay the seaman maintenance and cure terminated upon his subsequent service with Sinclair. *Id.* But, the court noted, the obligation to provide maintenance and cure continues until maximum medical recovery has in fact been achieved. *Id.* The court then found that the seaman was entitled to maintenance and cure from either Sinclair or Texaco or both, but could not obtain double compensation for a single maintenance and cure claim as a result of having rights against two shipowners. *Id.* at 580. The court then summarizes to

say, "[i]n other words, a seaman cannot have both damages and maintenance and cure if there would result any duplication of recovery upon a single claim." *Id.* at 581.

Sphere Drake relies upon the very next segment of *Gooden* wherein the court states, "[w]hen a seaman in the same suit proceeds against one party for damages and against another for maintenance and cure, this prohibition against double recovery has given rise to the problem whether liability for damages is primary with responsibility for maintenance and cure being only secondary. In such cases, the courts have sensibly placed the primary liability upon the party which has violated a duty owed the seaman, the maintenance and cure claim being payable only if recovery for damages is not obtainable." *Gooden,* 378 F.2d at 581.

Taken out of context, the last phrase would seem to support Sphere Drake's position, namely that an injured seaman "cannot recover on both a personal injury and a maintenance and cure claim." But as the statement immediately preceding provides, *Gooden* does not hold that a seaman cannot recover on both claims. Rather, *Gooden* holds that a seaman cannot recover on both claims *if* any duplication of recovery upon a single claim would result. *Id.*

Likewise, *Smith, Crooks,* and *Vickers* all found there must be no *duplication* of recovery, none held the injured seaman could not recover upon both claims. *Smith,* 105 F.2d at 606; *Crooks,* 459 F.2d at 633; and *Vickers,* 290 F.2d at 435. *Smith* in particular turned upon the fact that the record before the reviewing court did not establish duplication or overlapping of the same elements of expense; as is the case here. Sphere Drake did not provide the trial court with any summary judgment evidence of duplication of recovery and refers this court to none on rehearing.

Next, Sphere Drake points out that "Texas courts do not favor any type of

attorney contrived 'settlements' which mischaracterize the settlement monies...." We do not disagree. However, as we noted in our original opinion, the record contains no summary judgment evidence of mischaracterization. Contrary to Sphere Drake's contention, statements made by attorneys in their briefs do not, and cannot, establish anything as a matter of law. Simply put, the record before this court contains no evidence establishing as a matter of law the settlement agreement was, in fact, a sham and we decline to reach that conclusion solely upon the argument of counsel.

Sphere Drake further claims we erred in determining Sphere Drake had the burden to establish Royal's outlay for future maintenance and cure was not a real obligation. Sphere Drake argues that instead Royal had the burden to prove its designation for future maintenance and cure was legitimate. Sphere Drake provides no authority for this contention and absent any evidence to the contrary, we are reluctant to go behind the face of the agreement.

For these reasons, the motion for rehearing is denied.

MOTION DENIED.

WALKER, C.J., dissents.