**Tana GUNVILLE and Tom Gunville, Appellants,**

v.

**Shelby GONZALES, Appellee.**

No. 08–13–00357–CV

Court of Appeals of Texas, El Paso.

March 30, 2016

Kimbra Kathryn Ogg, The Ogg Law Firm, PLLC, Houston, TX, Attorney for Appellant.

Andrew Meade, Houston, TX, Attorney for Appellee.

Before McClure, C.J., Rodriguez, and Hughes, JJ.

### *OPINION*

ANN CRAWFORD McCLURE, Chief Justice

This appeal arises from a summary judgment in a malicious prosecution case. Tana Gunville was indicted on a federal charge relating to her alleged unauthorized use of gift cards. She was subsequently tried and cleared of that charge. Gunville and her husband then sued Shelby Gonzales and her husband for malicious prosecution.[1] Shelby Gonzales was the alleged victim, having claimed Gunville stole the gift cards from her. Gonzales moved for summary judgment. After striking several pieces of the Gunvilles' summary judgment evidence, the trial court granted the motion. For the reasons noted below, we affirm.

## PROCEDURAL AND FACTUAL SUMMARY

The genesis of this lawsuit is the federal indictment of Tana Gunville for Access Device Fraud, in violation of 18 U.S.C. § 1029(a)(2)(2015). That statute criminalizes one who knowingly using an "unauthorized access device" to obtained things of value totaling $1,000 or more in a period of one year. *Id.* The person must act with the intent to defraud and the conduct in some way must affect interstate or foreign commerce. *Id.* An "access device" is defined broadly enough to include merchant issued gift cards. *See* 18 U.S.C. § 1029(e)(1). Use of an access device is "unauthorized" if it stolen. 18 U.S.C. § 1029(e)(3).

In the context of this case, the access devices were gift cards pre-loaded with a set amount of cash credits. Tana Gunville obtained several of those cards, a fact not disputed by the parties. How she came into possession of the gift cards is hotly disputed. Gunville claims she purchased the gift cards at a discounted price from Gonzales. Conversely, Gonzales informed the Brewster County Sheriff (and signed a statement to the same effect) that inferred Gunville stole the gift cards from her home. Tana Gunville had access to the home as she was a real estate agent who was showing the house to prospective purchasers.

The Brewster County Sheriff's department investigated the allegation. Somehow the matter got the attention of Assistant U.S. Attorney Kerry Fleck, who presented the matter to a federal grand jury, which true billed Tana Gunville on two separate counts.[2] The case proceed-

---

1. Shelby Gonzales' husband, Guadalupe, was dismissed from the suit and is not a party to this appeal.

2. The first count pertains to the unauthorized use of the gift cards. Our record does not indicate what the second count pertained to, only that Gunville was also acquitted of that count as well.

ed to trial where she prevailed in obtaining an acquittal. Thereafter she sued Gonzales on a number of claims, including malicious prosecution. By the time of the summary judgment motion at issue here, only the malicious prosecution claim remained.

Gonzales moved for summary judgment contending that Gunville had no evidence that: (1) Gonzales initiated or procured the prosecution; (2) Gonzales lacked probable cause; and (3) Gonzales acted with malice. Gonzales alternatively claimed the record conclusively disproved each of these elements. Gonzales' affirmative motion was supported by a copy of the indictment and the affidavit of both Shelby and Guadalupe Gonzales who swore that neither testified before nor provided any information to the grand jury.

The Gunvilles timely filed their response with supporting evidence. On the same day as the hearing, Gonzales filed objections to almost all of that evidence. The trial court sustained most of those objections, which forms part of the basis of this appeal. We accordingly summarize the pertinent excluded and admitted evidence.

### Brewster County Sheriff's Statement by Shelby Gonzales (Exhibit 1)

Shelby Gonzales gave a written statement to Brewster County Sheriff Office. The handwritten statement appears on a "Witness Voluntary Statement Form" which bears the emblem of the Brewster County Sheriff's Office. The statement recites that her husband earns gift cards from his workplace. She had kept several gift cards in a safe place in their house. She noticed that several of the cards, totaling $6,500, were missing. When she told Tana Gunville about the missing cards, Gunville "overreacted" and "kept asking me if I could trace them." The statement recites that Gunville had access to Gonzales' house. Gonzales stated she never carried the cards in a way that they might accidentally be left with Gunville, nor did she sell the gift cards to Gunville. Using the unique identifying numbers for the cards, Gonzales was able to trace their use back to Gunville.

When Gonzales objected to this statement on authentication, hearsay, and relevance grounds, the trial court excluded the statement.

### Tana Gunville Affidavit (Exhibit Two)

The response included an affidavit from Tana Gunville. The trial court sustained objections to several paragraphs of the affidavit but permitted other portions. The admitted portions establish that Gunville and Gonzales had once been very good friends, but they had a falling out. Prior to that disagreement, Gunville had purchased several gift cards from Gonzales. On January 15, 2007, Gonzales accused Gunville in a telephone call of stealing gift cards from her home. The gift cards she claims were stolen were the ones that Gunville in fact had purchased from Gonzales.

The trial court sustained objections to portions of the affidavit that claimed Gonzales told the Brewster County Sheriff's Office that Gunville had stolen the cards. Gunville further stated that Gonzales repeated this claim over the next two and half years, "doing everything in her power to procure" Gunville's prosecution. The stricken portions of the affidavit claim that Gonzales made the allegation so she did not have to inform her husband that she was selling the cards to get cash to send to their daughter. The trial court also excluded Gunville's recital of what other persons had testified to in the criminal trial.

*Criminal Trial Testimony (Exhibits 3, 4, 5, 6, 8, 11, 12, 9, 10, 14, 17, 18, 20, 23, 24, 27, 28, 29, 30, 32, 33, 34, 35, 36, 37)*

The Gunvilles' also attached several excerpts of what they represent is testimony from Tana Gunville's criminal trial. The exhibits consist of page and line numbered questions and answers consistent with the appearance of a trial transcript. The identity of the witness is reflected on the top of each page. There was no certificate from the court reporter attached to the excerpts, or a date, or cause number. Gonzales objected to each of the excerpts as lacking any authentication. She additionally objected that some of the excerpts lacked relevance, contained hearsay, and that trial testimony from an unrelated proceeding is not admissible. The trial court excluded all of this evidence.[3]

The excerpts include direct and cross examination testimony from Shelby Gonzales and Sheriff Ronny Dodson. That testimony reflects that she first accused Gunville of stealing the gift cards on January 15, 2007. She was angry with Gunville and contacted the police to file charges. She denied ever selling gift cards to Gunville or others.

Gonzales made an offense report to Sheriff Dodson on January 16, 2007, and she contacted him frequently in the first few months. He opened a theft investigation after talking to her, and assigned a deputy to the case. Sheriff Dodson testified before the grand jury and Gonzales contacted him frequently before that testimony. Phone records reflect she spoke to the Sheriff eighty-eight times for total of 460 minutes; in her words "I am persistent. I was going to make sure that something was going to happen to her, yes."

Some of the excerpted testimony suggests that Gonzales celebrated the night Gunville was indicted by the grand jury. Much of the testimony is pertinent to the Gunvilles' theory that Shelby Gonzales needed to sell the gift cards for cash so she could send money to her daughter, and that she concealed this fact from her husband. Consistent with this theory, another witness testified that she saw Gonzales sell or offer for sale gift cards to others.

*Prosecutor's Closing Argument (Exhibit 19)*

Another excluded exhibit contains what appears to a portion of Prosecutor Kerry Fleck's summation in the criminal trial. The prosecutor argued that the use of the gift cards was "unauthorized" because they were "stolen." She also argued that Gunville had seven different explanations for how the cards went missing or came into her possession, including that she found them in her vehicle.

*Un-objected to or Otherwise Admitted Evidence*

As a part of their response, the Gunvilles admitted an answer to an interrogatory in which Shelby Gonzales admitted that that the federal prosecutor "read over my statements." In another affidavit, Tana Gunville swore she purchased a $1,000 Visa gift card for $800 from Gonzales. When she tried to tender a check in that amount, Gonzales insisted on cash. Gonzales herself had included Count I of the indictment which identified "S.G." as the victim of the theft of her gift cards.

At the summary judgment hearing, the trial court entertained the objections first. The court permitted the Gunvilles to file a post-hearing response to the evidentiary

---

**3.** In addition, the trial court excluded three other exhibits, numbered 15, 31, and 38, which are not raised as issues in this appeal.

objections (which had been filed the day of the hearing). That response included an affidavit from Tana Gunville's criminal trial attorney attesting that the statement to the Brewster County Sheriff's Department (Exhibit 1) was something received from the "Government." The response also included four certifications from Karl Myers, an official court reporter from the United States District Court for the Western District, attesting that the "foregoing" is a correct transcription of proceedings in the "above-entitled matter." The case style in not apparent from the certifications, nor are certifications necessarily tied to the excerpted testimony attached to the motion for summary judgment, other than the name of the court reporter is the same.

Several days later, the trial court granted the motion for summary judgment and in a separate order sustained most of the objections to the Gunvilles' exhibits. The Gunvilles filed a motion for new trial which was overruled.

## STANDARD OF REVIEW

■ We review a trial court's decision to grant summary judgment *de novo*. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex.2010). Gonzales filed a hybrid motion including both traditional and no-evidence grounds. The trial court granted the motion as whole, without specifying the grounds. In this situation, we review the no-evidence motion first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004).

Rule 166a(i) permits a party to move for a no-evidence summary judgment "without presenting summary judgment evidence," but it requires the moving party to "state the elements as to which there is no evidence." Tex.R.Civ.P. 166a(i); *Wade Oil & Gas, Inc. v. Telesis Operating Company, Inc.*, 417 S.W.3d 531, 540 (Tex.App.–El Paso 2013, no pet.); *Aguilar v. Morales*,

162 S.W.3d 825, 834 (Tex.App.–El Paso 2005, pet. denied). The burden then shifts to the non-movant to produce summary judgment evidence raising a genuine issue of material fact regarding each element challenged in the motion. *Wade Oil & Gas*, 417 S.W.3d at 540. The trial court must grant the motion unless the non-movant produces summary judgment evidence raising a genuine issue of material fact. Tex.R.Civ.P. 1 66a(i).

■ A no-evidence motion for summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard of review as we would for a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex.2003). Under this standard, we review the evidence in the light most favorable to the non-movant, crediting evidence favorable to that party if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). A genuine issue of material fact is raised if the non-movant produces more than a scintilla of evidence regarding the challenged element. *King Ranch*, 118 S.W.3d at 751. More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Id.* at 751. There is not a scintilla of evidence when the evidence is so weak as to do no more than create a mere surmise or suspicion of material fact. *Wade Oil & Gas*, 417 S.W.3d at 540. Evidence that fails to constitute more than a mere scintilla is, in legal effect, no evidence at all. *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex.2001); *Wade Oil & Gas*, 417 S.W.3d at 540.

■ Gonzales also asserted a traditional summary judgment under Tex. R.Civ.P. 166a(c). Under a traditional motion, the moving party carries the burden of showing that there is no genuine issue

of material fact and it is entitled to judgment as a matter of law. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex.2005); *Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex.1985). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex.2004); *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex.App.–El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Fort Worth Osteopathic Hospital*, 148 S.W.3d at 99. Once the movant establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence which raises a genuine issue of material fact, thereby precluding summary judgment. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979).

■ The Gunvilles also challenge the exclusion of their summary judgment evidence. Evidence presented in support of a summary judgment must be in the same admissible form as would be required in a conventional trial. Tex. R.Civ.P. 166a(f); *United Blood Services v. Longoria*, 938 S.W.2d 29, 30 (Tex.1997). We review the exclusion of summary judgment evidence for an abuse of discretion. *First State Bank of Mesquite v. Bellinger & Dewolf LLP*, 342 S.W.3d 142, 147 (Tex. App.–El Paso 2011, no pet.); *Barraza v. Eureka Co.*, 25 S.W.3d 225, 228 (Tex.App.–El Paso 2000, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for that of the trial court. *Downer*, 701

S.W.2d at 242; *First State Bank of Mesquite*, 342 S.W.3d at 147.

■ To obtain a reversal on the trial court's exclusion of evidence, an appellant must establish the error was harmful and was calculated to cause and probably did cause the rendition of an improper judgment. Tex.R.App.P. 44.1(a). To meet that burden, the Gunvilles must show the erroneously excluded evidence was controlling on a material issue dispositive of the case, was not cumulative, and its absence resulted in an improper judgment. *See Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex.2000). In review of a summary judgment, if we find the evidence was improperly excluded, we consider the excluded evidence in our *de novo* review of the summary judgment to determine possible harm. *See Moreno v. Quintana*, 324 S.W.3d 124, 128–29 (Tex.App.–El Paso 2010, pet. denied)(considering improperly excluded affidavit in review of granted summary judgment); *Fraga v. Drake*, 276 S.W.3d 55, 63 (Tex.App.–El Paso 2008, no pet.)(same).

### MALICIOUS PROSECUTION

■ The elements of malicious prosecution are: (1) commencement of a criminal prosecution against the plaintiff; (2) the defendant's initiation or procurement of that prosecution; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) lack of probable cause to initiate or procure the prosecution; (6) malice in filing the charge; and (7) damage to the plaintiff. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792 n. 3 (Tex.2006); *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex.1997).

■ We strictly apply these elements as they reflect a delicate balance of societal values. *Browning–Ferris Industries, Inc. v. Lieck*, 881 S.W.2d 288, 291 (Tex.1994)("Even a small departure from

the exact prerequisites for liability may threaten the delicate balance between protecting against wrongful prosecution and encouraging reporting of criminal conduct."). Citizens must be encouraged and free to report possible crimes to the authorities. *Id.* at 290–91, *citing Sebastian v. Cheney*, 86 Tex. 497, 25 S.W. 691, 694 (1894) and RESTATEMENT (SECOND) OF TORTS ch. 29, intro. note, at 405 (1977). At the same time, the consequences of arrest and prosecution for an offense are considerable, and every citizen should be protected from a prosecution based on false claims arising from some malicious intent. *Id.* at 290.

There is no dispute below that Tana Gunville was charged for an offense that was terminated in her favor. Gonzales did not challenge that the Gunvilles suffered some damages. And while the motion for summary judgment raised challenges to the probable cause and malice elements, Gonzales has not pursued either of those issues on appeal, nor responded to the Gunvilles recitation of evidence supporting those elements. The only basis upon which Gonzales asks that we affirm the judgment below is on the element of initiation or procurement, which embodies a causation element.

■■■■ A plaintiff must prove that the defendant either *initiated* or *procured* the prosecution as an element of the claim. RESTATEMENT (SECOND) OF TORTS, § 653(a)(1977). *Initiating* the action describes executing the charging instrument which goes before the magistrate, who then may issue an arrest warrant. *Id.* § 653(a) cmt. c ("Criminal proceedings are initiated by making a charge before a public official or body in such form as to require the official or body to determine whether process shall or shall not be issued against the accused."); *see also Lieck*, 881 S.W.2d at 292 ("A person initiates a criminal prosecution if he makes a formal charge to law enforcement authorities."). The Gunvilles do not contend, nor is there any evidence, that Gonzales initiated the charge. *See Lermon v. Minyard Food Stores, Inc.*, No. 05–13–00034–CV, 2014 WL 6466840, at *5 (Tex. App.–Dallas, Nov. 19, 2014, pet.denied)(mem.op.)(voluntary statement made by defendant was not a "formal charge" nor did it actually operate to initiate the criminal prosecution when detective presented his own probable cause affidavit to a magistrate).

■■■■ A defendant can also be liable for *procuring* the prosecution. *Lieck*, 881 S.W.2d at 292. A person procures a criminal prosecution "if his actions are enough to cause the prosecution, and but for his actions the prosecution would not have occurred." *Id.* Merely aiding or cooperating with the authorities cannot "cause" a criminal prosecution. *Id.* Nor does a person "procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another person" such as law enforcement or a grand jury. *Id.* But even if the decision is ultimately left to law enforcement, when a person knowingly provides false information which causes a criminal prosecution, they have effectively procured the prosecution and may be liable. *Id.* at 292, 294 ("What is true is that a person who provides false information cannot complain if a prosecutor acts on it").[4]

---

4. The *Lieck* court provides this instruction for the jury:

A person procures a criminal prosecution if his actions were enough to cause the prosecution, and but for his actions the prosecution would not have occurred. A person does not procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another, including a law enforcement official or the grand jury,

The Texas Supreme Court expanded on this false information exception in *King v. Graham*, 126 S.W.3d 75 (Tex. 2003). While noting the false information exception from *Lieck*, the court added that proving false information was given to authorities is "necessary" but it is not "sufficient." *Id.* at 76. Instead, the plaintiff has the burden of proving that the decision to prosecute "would not have been made but for the false information supplied by the defendant." *Id.* at 78. In *Graham*, the prosecutor testified, but was never asked whether three specific pieces of false information at issue had influenced his decision to take the case to the grand jury. *Id.* Having failed to meet the burden to show the false information caused the prosecution, the court rendered judgment in the defendants' favor. *Id.*

Several years later the Texas Supreme Court re-visited a malicious prosecution plaintiff's burden in *In re Bexar County Criminal Dist. Attorney's Office*, 224 S.W.3d 182 (Tex.2007). There, a malicious prosecution plaintiff subpoenaed several assistant district attorneys to solicit testimony as to how the charging decision was made in that case. *Id.* at 184. While the district attorney's office supplied a copy of its file to the civil litigants, the district attorneys sought to quash their subpoena to testify, contending any testimony they might give would be privileged. *Id.* The court of appeals concluded that *King* necessitated the district attorney's testimony because the plaintiff had to show any false information was important to the charging decision. *Id.* at 185. The Texas Supreme Court, however, ordered the subpoenas quashed, noting the plaintiffs need for the testimony in the malicious prosecution case

did not outweigh the importance of the prosecutor's privilege. *Id.* at 187–88. Moreover, the court suggests a malicious prosecution plaintiff might prove their case in other ways, including through circumstantial evidence, testimony from the defendant, or from expert testimony on prosecutorial decision-making. *Id.* at 189.

## EVIDENTIARY RULINGS

The Gunvilles urge in Issue One that the summary judgment cannot stand even with the limited evidence that was considered by the trial court. They alternatively urge in Issues Two and Three that if we disagree with Issue One, we should then review the evidentiary rulings. We believe it more appropriate to first define what evidence should be part of the summary judgment record, and then perform our *de novo* review of the record. Accordingly, we address the exclusion of evidence first.

### The Witness Statement

Exhibit One purports to be a witness statement signed by Shelby Gonzales on a Brewster County Sheriff's Department form. Gonzales objected to the exhibit because it was not authenticated, was hearsay, and was not relevant. Because the trial court's order excluding the exhibit does not state any particular ground, the Gunvilles carry the burden to overcome all three objections. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998)(court should uphold trial court's decision to exclude evidence on any legitimate ground supporting the ruling).

"Simply attaching a document to a pleading neither makes the document admissible as evidence, dispenses with proper foundational evidentiary require-

unless the person provides information which he knows is false. A criminal prosecution may be procured by more than one person.

*Id.* at 293.

ments, or relieves a litigant of complying with other admissibility requirements." *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 814 (Tex.App.–El Paso 2014, no pet.), *quoting Ceramic Tile Int'l, Inc. v. Balusek*, 137 S.W.3d 722, 725 (Tex.App.–San Antonio 2004, no pet.). A document may only be considered authentic if a sponsoring witness vouches for its authenticity or if the document otherwise meets the requirements of authentication as set out in the rules of evidence. *United Rentals*, 445 S.W.3d at 813.

The Gunvilles claim the witness statement is self-authenticating because it contains distinctive characteristics as contemplated by Tex.R.Evid. 901(b)(4); it is an official report under Rule 901(b)(7); or is a document under seal as described by Rule 902(1). They further contend that because it was served by them on Gonzales as part of a discovery response, it is authenticated as a "discovery product" under Tex. R.Civ.P. 166a(d), or alternatively, after the summary judgment hearing, they offered the affidavit of Tana Gunville's criminal defense attorney attesting that she got the document from "the Government" in the underlying criminal case.

In light of the record before us, we need only address the Gunvilles' first argument that the document was authenticated by its distinctive characteristics. The authentication requirement is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Tex.R.Evid. 901(a). "[T]he predicate for admissibility under rule 901 may be proven by circumstantial evidence." *Sanchez v. Tex. State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 509 (Tex. App.–Austin 2007, no pet.). One example of such proof is that the item can be authenticated by its "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Tex. R.Evid. 901(b)(4). This rule has been applied to support the admission of evidence in a number of different contexts. *Williams Farms Produce Sales, Inc. v. R & G Produce Co.*, 443 S.W.3d 250, 259 (Tex.App.–Corpus Christi 2014, no pet.)(supporting admission of documents printed from government websites); *Varkonyi v. State*, 276 S.W.3d 27, 35 (Tex. App.–El Paso 2008, pet. ref'd) (email with distinctive text tied to other testimony); *Ford Motor Co. v. Ozuna*, No. 04–98–00957–CV, 2000 WL 4544, at *2 (Tex.App.–San Antonio Nov. 30, 1999, no pet.)(documents with Ford emblem and letterhead produced by company); *City of Corsicana v. Herod*, 768 S.W.2d 805, 814 (Tex.App.–Waco 1989, no pet.)(instrument immediately preceded in a file by a document with company letterhead).

The witness statement here appears to be on a Brewster County Sheriff's Office form, bearing the emblem of the office. Gonzales counters, however, that there is nothing in the record that the form is in fact one from the Brewster County Sheriff's Office. The court's file, however, would show otherwise. In 2011, Gonzales' former counsel had, in fact, filed a business records affidavit from the Brewster County Sheriffs Office that proved up this identical witness statement as a business record of the sheriff's office. It also attested that the statement was an exact duplicate copy of the original. Moreover, Gonzales had also referenced the very same statement as an exhibit to an earlier motion for summary judgment that she had filed. Setting aside why Gonzales would challenge the authenticity of a document that she herself had earlier proved as authentic, we find that the earlier business record affidavit demonstrates the sheriff's office form is what it says it is. The statement on that form attached to the summary

judgment accordingly had distinctive characteristics proving its authenticity under Tex.R.Evid. 901(b)(4).

 Gonzales also objected on hearsay grounds. The Gunvilles respond that the statement is an admission by party opponent, and thus is excluded from the definition of hearsay. Nor was it offered for the truth of the matter asserted (and to the contrary, the Gunvilles' entire theory is that it was not true). We agree with the Gunvilles. An admission by a party-opponent is not hearsay. Tex.R.Evid. 801(e)(2). "*[A]ny* statement by a party-opponent is admissible against that party." [Emphasis in original]. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex.2007). Gonzales claims that the statement cannot be an admission by a party opponent because there is no proof she was the one who actually signed the statement. But this argument conflates the hearsay exception with authentication.[5]

Finally, Gonzales challenged the relevancy of the exhibit below. On appeal, however, Gonzales admits the statement is the only evidence demonstrating that she said anything to anyone about Tana Gunville. Accordingly we find the exclusion of Exhibit One was error and include the statement as a part of the summary judgment record to determine if its exclusion was harmful.

*Excluded Affidavit Paragraphs*

 The trial court excluded four numbered paragraphs from Tana Gunville's affidavit. We find no abuse of discretion in the trial court doing so.

 Paragraph eight recites Tana Gunville's belief that Shelby Gonzales told her husband the gift cards were stolen so she did not have to tell him she was selling the gift cards for cash. Gonzales objected to the statement as being conclusory and not based on personal knowledge. A statement is conclusory if it does not provide the underlying facts to support the conclusion. *See Brown v. Brown*, 145 S.W.3d 745, 751 (Tex.App.–Dallas 2004, pet. denied); *Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex.App.–Houston [14th Dist.] 2000, pet. denied). Conclusory testimony or affidavits are not competent summary judgment evidence and are insufficient to create a question of fact to defeat summary judgment. *See Cammack the Cook, L.L.C v. Eastburn*, 296 S.W.3d 884, 894–95 (Tex.App.–Texarkana 2009, pet. denied). "Statements of subjective belief are no more than conclusions and are not competent summary judgment evidence." *Krishnan v. Law Offices of Preston Henrichson, P.C.*, 83 S.W.3d 295, 299 (Tex. App.–Corpus Christi 2002, pet. denied), *citing Tex. Division–Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex.1994). A proponent must establish some facts for how the witness obtained the personal knowledge to support the conclusions they advance. *See* Tex.R.Civ.P. 166a(f)("[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); *Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 937–38 (Tex.1998)(witness' conclusion for how long substance was on floor required

---

5. Gonzales cites *Hislop v. State*, 64 S.W.3d 544, 546 (Tex.App.–Texarkana 2001, no pet.) in support other hearsay claim, but *Hislop* actually addresses authentication and upheld the admission of a confessional letter on the strength of its similarity in signature, and the location where it was found, to another letter signed by the accused. We also note the signature on the Shelby Gonzales' witness statement appears to be the same as that on the affidavit she signed in support of her summary judgment motion.

predicate for opinion). Tana Gunville claims that the fact of her prior friendship with Gonzales establishes an adequate foundation to support her testimony. We disagree. Simply because two people might have been friends at one time does not provide one personal knowledge about the other's motives for taking certain actions. There would need to be something more, such as a specific conversation about that specific topic.

Paragraph nine recites that "Shelby Gonzales represented to the Brewster County Sheriff's Office that I stole" the gift cards. It also claims she told other people the same thing and "consistently made this representation over the next two and half years, doing everything in her power to procure my prosecution through her actions and misrepresentations." Gonzales objected on lack of personal knowledge, lack of any predicate, and that the statement was conclusory. Again we agree. Gunville does not recite she overheard any of these conversations between Shelby Gonzales and others, and provides no other basis for how she reached these conclusions.

Paragraph ten alleges that Shelby Gonzales had sold other gift cards to Gunville on prior occasions requesting that she keep this quiet so Gonzales' husband would not find out. She also claimed Gonzales sold the cards to others, based on the trial testimony of two witnesses at her criminal trial. Gonzales objected to the summary of other witnesses' testimony as inadmissible hearsay. The Gunvilles do not address the hearsay objection on appeal and it is an independent ground sufficient to exclude the paragraph. *Malone*, 972 S.W.2d at 43 (appellate court should sustain trial court ruling on any proper basis asserted); *Torres v. GSC Enterprises, Inc.*, 242 S.W.3d 553, 559 (Tex.App.–El Paso 2007, no pet.)(failure to brief each objection to

summary judgment waived the error to its exclusion).

Finally, paragraph eleven asserts that both Shelby Gonzales and her husband "lied at my criminal trial about their serious marital problems" and about the motive to sell the gift cards. She supports this conclusion by relating the substance of what another person testified to at the criminal trial. Gonzales objected that portions of statement were conclusory, portions were not relevant, and other portions were hearsay. The Gunvilles do not address these objections on appeal and they are all independent grounds sufficient to exclude the paragraph. *Malone*, 972 S.W.2d at 43.

### Prior Trial Testimony

■ The majority of the Gunvilles' exhibits are snippets of testimony of various witnesses purportedly from her criminal trial. Gonzales objected that the exhibits were not authenticated, such as with the certification of the official court reporter as might be found in a deposition or reporter's record filed with this court.

Gunville contends the trial transcript is admissible without formal authentication because it was a "discovery product" as contemplated by Tex.R.Civ.P. 166a(d). That rule provides:

> Discovery products not on file with the clerk may be used as summary judgment evidence if copies of the material, appendices containing the evidence, or a notice containing specific references to the discovery or specific references to other instruments, are filed and served on all parties together with a statement of intent to use the specified discovery as summary judgment proofs: . . . (ii) at least seven days before the hearing if such proofs are to be used to oppose the summary judgment.

*Id.* The Texas Supreme Court applied this rule in *McConathy v. McConathy*, 869 S.W.2d 341, 341 (Tex.1994) to allow deposition excerpts as summary judgment evidence without the formal need for authentication. The court reasoned that the parties had "ready access to depositions taken in a cause" making authentication unnecessary under the rules. *Id.* at 342. *McConathy* has been extended to some discovery matters beyond depositions. *Neely v. Commn. for Law. Disc.*, 302 S.W.3d 331, 345 (Tex.App.–Houston [14th Dist.] 2009, pet. denied)(exhibits discussed in deposition testimony); *Guidry v. Wells*, No. 09–05–182 CV, 2006 WL 246493, at *1 (Tex.App.–Beaumont Feb. 2, 2006, no pet.)(mem.op.)(requests for admissions attached to summary judgment).

 Had Gonzales produced the transcript to Gunville, we might agree, if for no other reason than Tex.R.Civ.P. 193.7 could authenticate the document. *Id.* ("A party's production of a document in response to written discovery authenticates the document for use against that party" unless the party takes steps to object to the document's authenticity). But the Gunvilles' argument is that because they produced the transcript to Gonzales, they can use it against Gonzales without formal authentication. We disagree. "A party cannot authenticate a document for use in its own favor by merely producing it in response to a discovery request." *Polmounter v. Keystone Food Products, Inc.*, No. 14–05–00560–CV, 2006 WL 2548239, at *3 (Tex.App.–Houston [14th Dist.] Sept. 5,

2006, no pet.)(mem.op.), *citing Blanche v. First Nationwide Mortgage Corp.*, 74 S.W.3d 444, 452 (Tex.App.–Dallas 2002, no pet.).

We are persuaded by the Dallas Court of Appeals rationale in *Blanche* that "discovery products" do not include everything exchanged by either party in discovery. *Blanche*, 74 S.W.3d at 452 ("Rule 166a(d) does not eliminate the need to authenticate documents used as summary judgment evidence simply because they were produced during discovery."). Otherwise, a party could "self-authenticate" any document simply by attaching it to a discovery response to be served on an opponent. In a day and age when parties can and often do digitally produce thousands, if not tens or hundreds of thousands of documents, this interpretation of the rules simply creates too much opportunity for abuse.

 We therefore fall back on the general rule that while transcripts of testimony or matters from other proceedings might be admissible, they must be properly authenticated. *Gardner v. Martin*, 162 Tex. 156, 345 S.W.2d 274, 276–77 (Tex. 1961); *Soefje v. Jones*, 270 S.W.3d 617, 626 (Tex.App.–San Antonio 2008, no pet.); *Old Republic Sur. Co. v. Bonham State Bank*, 172 S.W.3d 210, 218 n.4 (Tex.App.–Texarkana 2005, no pet.).[6]

The Gunvilles' excerpts from the prior criminal trial were not properly authenticated and the trial court was within its discretion to exclude them. Accordingly

**6.** These cases also comport with how a federal court would have likely viewed admission of the federal criminal trial transcript in an ancillary proceeding. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 776–77 (9th Cir.2002)(uncertified copies of the reporter's transcript were not authenticated); *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir.1988)(prior trial testimony from other proceeding, even with counsel's affidavit stating that it was true and correct was not properly authenticated); *Steven v. Roscoe Turner Aeronautical Corp.*, 324 F.2d 157, 161 (7th Cir.1963)("an uncertified copy of testimony is inadmissible in a summary judgment proceeding"); *United States v. Tuteur*, 215 F.2d 415, 417 (7th Cir.1954)(an uncertified copy of testimony is inadmissible in a summary judgment proceeding).

we need not reach the hearsay and other specific objections lodged to each of the individual excerpts. We address the Gunvilles claim that they should have been permitted to authenticate the exhibits after the hearing in our discussion of Issue Four.

## WAS THERE SOME EVIDENCE GONZALES PROCURED GUNVILLE'S PROSECUTION?

 Gonzales' motion for summary judgment generally claimed that the Gunvilles lacked any evidence that she had initiated or procured the criminal prosecution. The motion focused both on the intervening actions of the federal prosecutor and the grand jury. On appeal, Gonzales principally focuses on the lack of any evidence of what transpired before the grand jury. For the reasons set out below, we are disinclined to put the burden on a malicious prosecution plaintiff to establish the rationale of a federal grand jury, as distinct from the Assistant U.S. Attorney.

First, we find no prior cases requiring proof of the decision making process of the grand jury as distinct from that of the prosecutor who presents the charges. The court's decision in *Lieck*, citing the Restatement, holds that "a person cannot procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another person, a law enforcement official *or the grand jury.*" [Emphasis added]. 881 S.W.2d at 292. But in its discussion of the false information exception to this rule, the court exclusively discusses the defendant's interactions with the prosecutor. *Id.* at 293–94.

In *King v. Graham*, the court repeated *Lieck*'s holding regarding independent decision makers, including the grand jury, but three sentences later in the opinion framed the burden of proof around the prosecutor's actions. 126 S.W.3d at 76

("In other words, there must be proof that the prosecutor acted based on the false information and that but for such false information the decision would not have been made."). The facts in *Graham* are also instructive. Several pieces of false information were given to local law enforcement which forwarded the information to the local district attorney. *Id.* at 77–78. The district attorney in turn presented the case to a grand jury. *Id.* Following a favorable jury verdict for the malicious prosecution plaintiff, the Texas Supreme Court reversed and rendered based on the lack of evidence as to whether the false information influenced the prosecutor. *Id.* at 78–79. The court never discussed a lack of evidence about the grand jury's decision making process.

Moreover, requiring a malicious prosecution plaintiff to prove what motivated the grand jury, as distinct from, or in addition to the prosecutor, would likely change the balance the Texas Supreme Court has attempted to strike for the malicious prosecution cases.

 The grand jury belongs to no branch of government, but rather serves "as a kind of buffer or referee between the Government and the people." *United States v. Williams*, 504 U.S. 36, 47, 112 S.Ct. 1735, 1742, 118 L.Ed.2d 352 (1992). The Fifth Amendment's guarantee to indictment by a grand jury "presupposes an investigative body 'acting independently of either prosecuting attorney or judge,' whose mission is to clear the innocent, no less than to bring to trial those who may be guilty." *United States v. Dionisio*, 410 U.S. 1, 16–17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973), *quoting Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960).

The court has often emphasized the role of a grand jury as an independent body

which acts as check on prosecutors. *See United States v. Mandujano,* 425 U.S. 564, 571, 96 S.Ct. 1768, 1774, 48 L.Ed.2d 212 (1976)(plurality opinion)("the grand jury continues to function as a barrier to reckless or unfounded charges"); *Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962)(describing the grand jury as the "primary security to the innocent against hasty, malicious and oppressive persecution"); *see also Branzburg v. Hayes,* 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626 (1972)(recognizing the dual function of the grand jury "of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions.").

To the degree they are independent bodies, Gonzales might be correct they are a distinct link in the causation chain. But several courts and commentators have lamented the lack of independence of grand juries. *United States v. Navarro–Vargas,* 408 F.3d 1184, 1195 (9th Cir.2005)("Currently, grand jurors ... tend to indict in the overwhelming number of cases brought by prosecutors."); *In re Grand Jury Subpoena of Stewart,* 144 Misc.2d 1012, 545 N.Y.S.2d 974, 977 n. 1 (Sup.Ct.), *aff'd as modified,* 156 A.D.2d 294, 548 N.Y.S.2d 679 (1989)("[M]any lawyers and judges have expressed skepticism concerning the power of the Grand Jury."); Roger Roots, *Grand Juries Gone Wrong,* 14 RICH. J.L. & PUB. INT. 331, 332 (2010)("Today's federal grand juries fail to provide even a modicum of resistance to the government...."); Gregory T. Fouts, Note, *Reading the Jurors Their Rights: The Continuing Question of Grand Jury Independence,* 79 IND. L.J. 323, 324 (2004)(arguing that the grand jury is "no longer an independent body, but rather an arm of the prosecution"); Case Comment, *Independence of the Grand Jury,* 106 HARV. L.REV. 191 (1992)(arguing the lack of a

requirement for a prosecutor to present exculpatory evidence threatens grand jury's role as check on prosecutor's judgment). Even the federal model grand jury instructions expressly inform grand jurors of this on-going criticism. *Navarro–Vargas,* 408 F.3d at 1187, *quoting* Model Grand Jury Charge, *Report of the Proceedings of the Judicial Conference of the United States* 33 (March 12, 1986)("There has been some criticism of the institution of the Grand Jury for supposedly acting as a mere rubber stamp, approving prosecutions that are brought before it by governmental representatives.").

Whichever side of this argument might be correct in the aggregate, an individual litigant is unlikely to ever know the degree of independence of a particular federal grand jury in their particular case. Secrecy has been an essential component of a grand jury's function since pre-colonial times. *Navarro–Vargas,* 408 F.3d at 1184, 1199 (detailing history of grand juries for past 800 years, and noting origins of secrecy since the late 1600s). The secrecy requirement is outlined in FED.R.CRIM.P. 6 which strictly shields a grand jury's vote and its deliberations. Other than an interpreter, only the grand jurors may be present when they deliberate and vote. *Id.* at 6(d)(2). Subject to several defined exceptions, grand jurors and prosecutors may not disclose matters occurring before the grand jury. *Id.* at 6(e)(2)(B)(i)(vi).

The rule provides only limited exceptions for obtaining portions of grand jury proceedings (and none for the grand jury deliberations or votes). *Id.* at 6(e)(3)(A). A civil litigant's only avenue to obtain testimony is under Rule 6(e)(3)(E)(i) which requires a strong showing of particularized need. *U.S. v. Sells Engineering, Inc.,* 463 U.S. 418, 442, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743 (1983); *Grand Jury,* 44 GEO. L.J. ANN. REV.CRIM. PROC. 290, 313–14

(2015)(party must show that the material sought is necessary to avoid a possible injustice in another judicial proceeding; the need for disclosure outweighs the need for continued secrecy; and the request is structured narrowly to cover only the material needed). An individual litigant's success at obtaining grand jury materials is never guaranteed. *See e.g. Douglas Oil Co. of California v. Petrol Stops N.W.*, 441 U.S. 211, 213, 99 S.Ct. 1667, 1670, 60 L.Ed.2d 156 (1979)(disclosure of grand jury transcripts is appropriate only in those cases where need for disclosure outweighs public interest in secrecy, and burden of demonstrating this balance rests upon private party seeking disclosure).[7]

A litigant might of course inquire of the individual witnesses who appeared before the grand jury as to their testimony. *See* FED.R.CRIM.P. 6(e)(2) Advisory Committee's Note (1944) ("The rule does not impose any obligation of secrecy on witnesses."). But this alternative assumes one knows what witnesses were called.

The criminal defendant might also obtain at least some of the grand jury witness transcripts during the course of their criminal trial. They are entitled to exculpatory or impeachment useful materials

under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). And by statute, the Government must also, upon motion, produce a witness's prior statement, including a grand jury transcripts, but only after the witness has testified and only to the extent it "relates to the subject matter as to which the witness has testified." 18 U.S.C.A. § 3500(a)(b)(c)(e)(3)(2015)(the "Jencks Act"). Neither of those avenues guarantees a party could get all of the grand jury testimony, and both may turn on whether the defendant takes the case all the way to trial. If a case were voluntarily dismissed prior to trial, for instance, neither would come into play.[8]

■ In addition to the impracticality of ever obtaining the grand jury's rationale for the indictment, we believe the proper focus should be on the prosecutor's decision. The prosecutor is, after all, the person who formulates the charges, presents them to a grand jury, and if an indictment is returned, is the one who prosecutes the case. The prosecutor has no obligation to prosecute the presentment, to sign the return of an indictment, or even to prosecute an indictment properly returned. *See United States v. Batchelder*, 442 U.S. 114,

---

**7.** A number of cases, for instance, have denied or limited access to grand jury transcripts. *U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958)(civil antitrust defendant denied entire transcript, even though plaintiff government was using it to prepare civil case); *United States v. Capozzi*, 486 F.3d 711, 727 (1st Cir.2007)(district court properly denied disclosure despite target's challenge of subject matter jurisdiction and sufficiency of evidence before grand jury); *United States v. Alexander*, 860 F.2d 508, 514 (2nd Cir.1988)(abuse of discretion for court to allow public disclosure of grand jury materials for use in sentencing because disclosure far broader than necessary); *Shields v. Twiss*, 389 F.3d 142, 148 (5th Cir.2004)(district court properly denied disclosure of grand jury information because no

particularized need shown); *McAninch v. Wintermute*, 491 F.3d 759, 767–68 (8th Cir.2007)(district court properly denied disclosure of grand jury testimony because testimony could be obtained through deposition); *United States v. Aisenberg*, 358 F.3d 1327, 1348–50 (11th Cir.2004)(abuse of discretion for court to allow blanket disclosure of grand jury transcripts without showing of particularized need for specific materials in lawsuit).

**8.** In tins case, the Gunvilles' attorney represented at the motion summary judgment hearing that he was in possession of a grand jury transcript but was prohibited from releasing it to others. The extent of the transcript or the particular restriction applicable to it are not developed in our record.

124, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979)("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."); *Confiscation Cases*, 74 U.S. (7 Wall. 454), 457, 19 L.Ed. 196 (1869)("Public prosecutions, until they come before the court to which they are returnable, are within the exclusive discretion of the district attorney. . . ."); *United States v. Cox*, 342 F.2d 167, 182 (5th Cir. 1965)(Brown, J., concurring); *id.* at 193 (Wisdom, J., concurring)(no obligation to prosecute case once true billed).

■ The Texas Supreme Court has described the malicious prosecution elements as a delicate balance which must be closely applied. *Lieck*, 881 S.W.2d at 291. We view a requirement of proving the motivation of a federal grand jury, as distinct from the federal prosecutor, to be a sea-change in this balance. Accordingly, we reject Gonzales' claim that the Gunvilles failed to prove the procurement element because they failed to show what transpired and motivated the federal grand jury. But having reached that conclusion does not end our inquiry, because they still must have presented some evidence that the alleged false statement caused the prosecution through the auspices of the federal prosecutor. On that issue we agree the trial court properly granted summary judgment.

The Gunvilles direct us to the following evidence supporting the procurement element: the indictment which lists Gonzales as the victim; the statement that Gonzales gave to the Brewster County Sheriff; and Gonzales' interrogatory answer that the federal prosecutor "read over my statements." She buttresses this claim by contending this was a "she said-she said" dispute and Gonzales' claim of the theft necessarily had to have been instrumental in the indictment. *See Hernandez v.*

*Mendoza*, 406 S.W.3d 351, 354 (Tex.App.–El Paso 2013, no pet.)(summary judgment reversed in malicious criminal prosecution claim stemming from "he-said/he-said" criminal case).

■ We agree that a jury might infer causation when the only information the prosecutor had was the false information and an indictment was thereafter returned. *Graham*, 126 S.W.3d at 79. But the failing in the summary judgment proof here is that we do not know what was actually before the federal prosecutor, nor is there anything in the record that establishes or infers that Gonzales' statement was the only proof of the theft of the gift cards. While the Gunvilles' briefing refers to this a "she said-she said" dispute between two former friends, briefs (or pleadings) are not summary judgment evidence. *See Calp v. Tau Kappa Epsilon Fraternity*, 75 S.W.3d 641, 647 (Tex.App.–Amarillo 2002, pet. denied)(disregarding factual statements not supported by record references); *Royal Ins. Co. of Am. v. Sphere Drake Underwriting Mgt., Ltd.*, 4 S.W.3d 378, 382 (Tex.App.–Beaumont 1999, pet. denied)("statements made by attorneys in their briefs do not, and cannot, establish anything as a matter of law"); *Triland Investment Group v. Tiseo Paving Co.*, 748 S.W.2d 282, 284 (Tex.App.–Dallas 1988, no writ)(response to motion for summary judgment not summary judgment evidence).

The Gunvilles also argue that so long as the false statement is material, and is reviewed by the prosecutor, they have raised at least a scintilla of evidence for causation. But a close view of the facts in *Graham* suggest otherwise. The plaintiffs in that case had been indicted for theft for having taken funds to secure hunting rights, but had allegedly failed to so. 126 S.W.3d at 77. The malicious prosecution defendants, King and others, had made

four false statements: King and the others had booked hunters; the plaintiff hunting guides having been paid had not secured any hunting right; a prominent politician was a part of King's group; and the corporation King and the others operated under was named one thing, when it was actually another. *Id.* at 77–78. The prosecutor testified in the case and affirmatively discounted the importance of the politician's role. *Id.* 78. The prosecutor had not been "asked about the materiality of any of the other false or misleading statements." *Id.* at 78–79. Nor was there any evidence the decision of the prosecutor was based on any of this information. *Id.*

The elements of a theft prosecution include the unlawful appropriation of property with the intent to deprive the owner of that property. Tex.Penal Code Ann. § 31.03 (West Supp.2015). While King's statement that the plaintiffs failed to reserve any animals for the hunt might presumptively be relevant to that the unlawful appropriation issue, the plaintiffs failed to present any evidence the information actually was material to the prosecutor. By the same token, this record has no direct or circumstantial evidence of the prosecutor's thought processes with regard to Gonzales' statement.[9]

The remaining evidence that the Gunvilles point to—the indictment itself and the fact the prosecutor reviewed a state-ment(s)—also fails to raise a scintilla of evidence as to the prosecutor's justification for bringing the indictment. Shelby Gonzales could well have been the victim as alleged in the indictment and never been a witness in the case if the federal prosecutor had other witnesses supporting the theft claim. Without some information either from the prosecutor's file, or the witnesses called at trial, we are left only with surmise on this critical fact. And knowing only that the prosecutor reviewed her statement does not inform us of how prosecutor viewed the statement, or what if any other evidence she had.[10]

In sum, this case seems comparable to *King v. Graham* where the prosecutor never ascribed any significance to the false statement proven by the malicious prosecution plaintiff. Just as in *Graham,* there was some proof the false statements were put before the prosecutor, but no proof it was relied on such that but for Gonzales' statements, the prosecution would not have occurred.

### OPPORTUNITY TO CURE

The Gunvilles complain in Issue Four that they were not given an opportunity to cure any defects in the admission of summary judgment evidence. "When a summary judgment movant objects to summary judgment evidence prof-

---

9. The Gunvilles place great weight on this author's opinion in *Hernandez v. Mendoza,* 406 S.W.3d 351, 354 (Tex.App.–El Paso 2013, no pet.) which reversed a summary judgment in a malicious criminal prosecution arising out of a criminal harassment charge. One element of that offense is that the defendant made repeated contact which harassed another. Tex.Penal Code Ann. § 42.07(a)(4)(West 2011). The alleged false statement was that repeated calls had been made, when there was summary judgment evidence that there were only two calls in a three month period. 406 S.W.3d at 355–56. Not apparent from the opinion is that the motion for summary judgment included an affidavit from the prosecutor who affirmatively indicated that the frequency of the calls was material to his decision to present the case to the grand jury. There was simply no question in that case that the false statement was central to the prosecutor's decision making process.

10. For that matter, there is also no evidence that the "statements" the federal prosecutor reviewed included Exhibit One, which is the only statement in the summary judgment record.

fered by the nonmovant, the burden lies upon the nonmovant to request relief under Rule 166a(f), including a continuance or the opportunity to cure any formal defects in the nonmovant's summary judgment evidence." *Torres v. GSC Enters., Inc.,* 242 S.W.3d 553, 560 (Tex.App.–El Paso 2007, no pet.); *see* TEX.R.CIV.P. 166a(f). Even at that, courts distinguish defects in form from those of substance. A defect in form invokes the opportunity to cure provision in Rule 166a(f) while a defect in substance does not. *Ceballos v. El Paso Health Care Systems,* 881 S.W.2d 439, 444–45 (Tex.App.–El Paso 1994, writ denied). With regard to authentication issues, the complete absence of authentication is a defect of substance, while an attempted, but improper authentication is a defect of form. *In the Estate of Guerrero,* 465 S.W.3d 693, 706–07 (Tex.App.–Houston [14th Dist.] 2015, pet. filed); *Blanche v. First Nationwide Mortgage Corp.,* 74 S.W.3d 444, 451 (Tex.App.–Dallas 2002, no pet.). Here, the original summary judgment motion made no attempt to authenticate any of the disputed exhibits, and the trial court had no obligation to permit a late filed remedy for this substantive defect.

Even at that, the response that the trial court permitted the Gunvilles to file did not correct the admissibility problems with the testimony. As to the excerpts from the criminal trial, the Gunvilles attached four reporter's certifications which purported to prove up some trial record, but not necessarily the trial excerpts they had originally offered. The certifications were not definitively tied to the excerpts of the testimony attached to the summary judgment.

Nor do we believe that any of the contested evidence touches the core issue of what motivated the prosecutor to bring this charge. Most of the evidence pertains to Shelby Gonzales' motives, her credibility, and the issue of malice. The only excerpts that touch on the reasons for the prosecution inform us that Sheriff Dodson testified before the grand jury, and that he was in contact with Gonzales before that testimony. But he never testified to what he told the grand jury, or whether that information came from Gonzales or others.

Nor do we place credence in the excerpts of the prosecutor's closing argument. The argument would necessarily be a summary of what the evidence at trial showed. "A prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence." *U.S. v. Mendoza,* 522 F.3d 482, 491 (5th Cir.2008). "A prosecutor may not directly refer to or even allude to evidence that was not adduced at trial." *United States v. Murrah,* 888 F.2d 24, 26 (5th Cir.1989). The prosecutor's closing remarks accordingly do not reflect what evidence was before the prosecutor when the case went before the grand jury.

## CONCLUSION

We overrule Issue One which contends that there was legally sufficient evidence that Shelby Gonzales procured the prosecution. Except for Exhibit One, we overrule Issues Two and Three as to the exclusion of certain exhibits. As explained above, we find the exclusion of Exhibit One to be harmless error as it does not affect the outcome of the summary judgment motion. Finally, we overrule Issue Four and affirm the judgment below.